TYLER *v.* PIERCE, et al.

Nov. 24, 1952

(See footnote)

No. 38522 9 Adv. S. 62 61 So. 2d 309

*Colin Stockdale* and *J. Ed Franklin*, for appellant.

500

*Joe T. Patterson,* Assistant Attorney General, for appellee.

ROBERDS, P. J.

Tyler was indicted in Jefferson County, Alabama, for the crime of grand larceny in that county. The Governor of Alabama requested the Governor of Mississippi to cause Tyler to be arrested and delivered to Rufus Dudley, the designated agent of the State of Alabama. The Governor of Mississippi, after a hearing, granted the request. Tyler sued out this writ of habeas corpus against M. B. Pierce, Chief Detective of the City of Jackson, and Dudley, seeking his discharge from their custody and detention. The lower court denied the petition and Tyler appeals.

As we understand the petition it is grounded on two contentions: First, that the requisition papers are fatally defective, and, second, that appellant is not guilty of the crime, or, if so, he has settled and adjusted the matter.

Under the first contention he says that the writ for his arrest issued by the clerk of the circuit court of Jefferson County recites he was indicted by that court at the July Term, "19-1"; that this is no date whatever and renders the extradition proceedings void. There are two answers to the contention: The first is that the copy of the indictment, duly certified, states that the indictment was returned at the "July Term, 1941," and the indictment prevails over recitations in the warrant for arrest as to the contents of the indictment, and the second is that the writ for the arrest is not a requisite part of the extradition papers, either under the Federal statute (Sec. 662, U. S. C. A., Title 28), or under the Mississippi statute (Sec. 3981, Miss. Code 1942). Ex Parte Walters, 107 Miss. 439, 64 So. 2; Bishop v. Jones, 207 Miss. 423, 42 So. 2d 421.

 Appellant further urges the invalidity of the extradition papers because it is not in dispute that the date

of the crime, if one was committed, was October 31, 1941, and the indictment recites it was returned at the July Term, 1941; that, therefore, the papers show the indictment was returned before the crime is alleged to have been committed. We do not think that result follows. The indictment was returned by the Tenth Judicial Circuit Court. That district is composed entirely of Jefferson County. Code of Alabama 1940, Title 13, Sec. 112. The indictment shows it was filed in open court December 5, 1941. It does not give the date it was returned nor the date of the crime. It does recite that the larceny occurred "before the finding of this indictment." It is not intimated that more than one indictment for larceny in Jefferson County was ever found against appellant. Therefore, we must assume that the July Term of court ran past the date it is claimed the larceny occurred and the indictment was returned after such date.

As to the second contention, appellant testified he was arrested for grand larceny in Birmingham on the night of October 31, 1941, at a hotel operated by his foster sister; that his arrest was occasioned by a woman who did not like him; that he was informed he was charged with larceny of money from this woman; that on his second day in jail he was informed by a boy that he knew an attorney who would get him out of jail for $35.00; that he gave this boy that sum for that purpose. That later, accompanied by an attorney whose name he could not recall, he went before Judge Abernathy, and executed an appearance bond. A certified copy of this bond is in the record. It was signed by appellant as principal and by two other parties as sureties, the signatures of the sureties being signed by R. M. McLeod, attorney for the defendant Tyler. It was for $500.00. It obligated Tyler to appear "at the present term of the circuit court of Jefferson County, and from term to term and thereafter until discharged by law, to answer a criminal prosecution for the offense of grand larceny." It recites that McLeod, the attorney for Tyler,

demanded a jury trial. It was approved by Judge Aber-
nathy November 13, 1941. After his arrest, and presum-
ably after his release under said bond, (although this is
not very definite), Tyler came to Jackson, Mississippi,
where he says he raised $400.00 and returned to Birming-
ham. He gave this money to a negro boy by name of
Johnny Snell, who was supposed to deliver it to Mr. Ware,
a police officer of Birmingham, who was one of the offi-
cers who arrested him, in settlement of the case. Mr. Ware
was dead when this hearing took place. Tyler says that
is the last he heard of the case, and he supposed it was
settled. He says he gave the police officers his addresses
in Vicksburg and Jackson, Mississippi. He then named
several states to which he had been since he was indicted.
He also said he had openly visited Birmingham a number
of times. There is some uncertainty from his testimony
whether he meant to say he gave the $400.00 to Johnny
Snell or to his attorney. He does say that Snell and his
foster sister told him ''Everything is all right, he, got the
money, you have nothing to worry about.'' Summed up,
his testimony means he knew he was charged with grand
larceny; he was arrested and imprisoned therefor; hired
an attorney; appeared in court with his attorney; executed
an appearance bond; he never appeared; no trial was had;
that, at most, he thought he had settled the charge by pay-
ing, through the dubious method described, the sum of
$400.00; that he was publicly in and out of the City of
Birmingham from time to time; that his home was in
Mississippi and he was in this state when arrested; that
he did not commit the crime here involved. He did admit
that he had been convicted a number of times of other
crimes in various states of the Union, including one Fed-
eral conviction and service in a Federal penitentiary.

This Court has announced several principles applicable
to extradition proceedings.

One is that the extradition papers, unless fatally
defective, make out a prima facie case for extraditing the

fugitive. Scott v. State, 70 Miss. 247, 11 So. 657; Ex Parte Devine, 74 Miss. 715, 22 So. 3; Ex Parte Walters, 106 Miss. 439, 64 So. 2.

▆▆▆ Another is that all doubts are resolved in favor of the legality of the order of the Governor of the asylum state for delivery of the fugitive to the agent of the demanding state. Miller v. State, 207 Miss. 156, 41 So. 2d 375, cert. denied, appeal dismissed, Miller v. Wiggins, 94 L. Ed. 516.

▆▆▆ Mere irregularities in the extradition papers, or reversible errors existing before conviction, cannot prevent extradition, but otherwise where the verdict and judgment are void on their face and nullities. Scott v. State, supra; Kelly v. Douglas, 164 Miss. 153, 144 So. 237.

▆▆▆ The guilt or innocence of the accused cannot be inquired into. Ex Parte Devine, supra; Ex Parte Edwards, 91 Miss. 621, 44 So. 827; Bishop v. Jones, 207 Miss. 423, 42 So. 2d 421.

The rule announced in the Bishop case appears to be an exception to the general rule last announced—that is, that the guilt or innocence of the accused cannot be inquired into an extradition proceedings. Proof that the accused was not in the demanding state when the crime was committed may also be a defense on the merits.

In the case at bar the extradition papers consist of properly certified copies of the indictment, of the writ for the arrest of Tyler in Jefferson County, (which, as stated, was not necessary) and of the appearance bond; application to the Governor of Alabama by the Solicitor of the Tenth Judicial District for issuance of his official request to the Governor of Mississippi for extradition of Tyler; the issuance of that request by the Governor of Alabama, attaching as a part thereof the four first named documents; an opinion by the Attorney General of Mississippi that he had examined all of the foregoing papers "and find same to be in due and proper form according to law," and an order of the Governor of Mississippi, issued after

a hearing by him, for the arrest of Tyler and his delivery to the agent of the State of Alabama.

As hereinbefore adjudicated, these papers were all in proper form except as to the defects above discussed and these defects amount to no more than irregularities. The introduction of these papers made out a prima facie case for extradition of Tyler.

■■■ The testimony offered by Tyler was incompetent. It at most amounted to his saying in general terms he was not guilty, and that he thought he had settled the matter by paying a policeman a sum of money, which, of course, could not legally be done. His testimony is not within the Bishop case, supra. He admitted he was in Birmingham the night of the alleged crime. The lower court was correct in dismissing the habeas corpus petition and ordering Tyler to be delivered to the agent of the State of Alabama.

Affirmed.

*Hall, Lee, Holmes* and *Arrington, JJ.*, concur.

(Cases appealed to the Supreme Court of the United States are not officially reported until disposed of there. This case was so appealed but the appeal was dismissed and the record was closed by the parties on May 7, 1953.)