348 So.2d 1007 (1977)
Willis JOHNSON and Betty Johnson
v.
John LEDBETTER, Sheriff of Jackson County, Mississippi.
No. 49555.
Supreme Court of Mississippi.
July 20, 1977.
Rehearing Denied August 24, 1977.
Alfred Lee Felder, Pascagoula, for appellants.
A.F. Summer, Atty. Gen. by Edwin A. Snyder, Asst. Atty. Gen., Jackson, for appellee.
*1008 Before GILLESPIE, C.J., and SUGG and BROOM, JJ.
SUGG, Justice, for the Court:
This case comes to us on petitioners' appeal from an order of a Habeas Corpus Court in Jackson County denying their petition for writ of habeas corpus. The effect of the denial of the writ releases the custody of petitioners to the Tennessee authorities for return to the State of Tennessee under an extradition warrant issued by the Governor of Mississippi at the request of the Governor of Tennessee. We affirm.
Defendant assigns as error a very narrow issue as the sole ground for reversal and our consideration is limited accordingly. Petitioners contend that they were not present in the State of Tennessee at the time of the commission of the crime charged in an indictment[1] returned by a grand jury in Washington County, Tennessee on July 22, 1974 charging them with obtaining money under false pretenses on or about December 21, 1973.
Before considering the issue presented by this appeal, we must pause to note that the rights of petitioners are to be determined by the United States Constitution as implemented by 18 U.S.C.A. § 3182 (1969), the decisions of the United States Supreme Court, and Mississippi statutes to the extent that they may be in aid of, and not inconsistent with, the Constitution and laws of the United States on the question.
In Bishop v. Jones, 207 Miss. 423, 42 So.2d 421 (1949), this principle was stated as follows:
The rights of the relator are to be determined by Section 2, paragraph 2, of Article IV of the Constitution of the United States, as implemented by Section 662 [now § 3182], Title 18, U.S.C.A., and the decisions of the Supreme Court of the United States construing such constitutional provision and this federal statute, together with the help of state court decisions not inconsistent with the supreme law on the question of interstate extradition. State statutes and decisions relating to habeas corpus and extradition, such as our Code chapter on Habeas Corpus, Section 2815 et seq., Code of 1942, and Section 3981 thereof, are not applicable to interstate extradition except to the extent that they may be in aid of, and not inconsistent with, the Constitution and laws of the United States on the question. (207 Miss. at 438, 42 So.2d at 422).
Bishop was followed in Loper v. Dees, 210 Miss. 402, 49 So.2d 718 (1951) where we held *1009 that Mississippi statutes relating to habeas corpus and interstate extradition are not applicable except to the extent that they may be in aid of and not inconsistent with the Constitution and laws of the United States on the question.
These two cases follow the rule announced in South Carolina v. Bailey, 289 U.S. 412, 53 S.Ct. 667, 77 L.Ed. 1292 (1933) where the United States Supreme Court stated:
These questions of federal right were properly submitted for consideration by the State court upon the return to the writ of habeas corpus. And it was the duty of that court to administer the law prescribed by the Constitution and statute of the United States, as construed by this Court. (289 U.S. at 420, 53 S.Ct. at 670, 77 L.Ed. at 1296).
In Munsey v. Clough, 196 U.S. 364, 25 S.Ct. 282, 49 L.Ed. 515 (1905), the United States Supreme Court held that the questions before the governor of an asylum state are whether the person demanded has been substantially charged with a crime, and whether he is a fugitive from justice, and stated:
The first is a question of law and the latter is a question of fact, which the governor, upon whom the demand is made, must decide upon such evidence as is satisfactory to him. (196 U.S. at 372, 25 S.Ct. at 784, 49 L.Ed. at 517).
The Court further stated:
The issuing of the warrant by him, with or without a recital therein that the person demanded is a fugitive from justice, must be regarded as sufficient to justify the removal, until the presumption in favor of the legality and regularity of the warrant is overthrown by contrary proof in a legal proceeding to review the action of the governor. Roberts v. Reilly, 116 U.S. 80, 6 S.Ct. 291, 29 L.Ed. 544; Hyatt v. New York, 188 U.S. 691, 23 S.Ct. 456, 47 L.Ed. 657 (196 U.S. at 372, 25 S.Ct. at 784, 49 L.Ed. at 517).
In South Carolina v. Bailey, supra, the Court held that the person in custody as a fugitive from justice under an extradition warrant, in proper form, should not be released unless, beyond a reasonable doubt, such person was without the demanding state when the alleged offense was committed, and said:
Speaking for the Court in Illinois ex rel. McNichols v. Pease, 207 U.S. 100, 28 S.Ct. 58, 112, 52 L.Ed. 121, 126, Mr. Justice Harlan said  `When a person is held in custody as a fugitive from justice under an extradition warrant, in proper form, and showing upon its face all that is required by law to be shown as a pre-requisite to its being issued, he should not be discharged from custody unless it is made clearly and satisfactorily to appear that he is not a fugitive from justice within the meaning of the Constitution and laws of the United States. We may repeat the thought expressed in Appleyard's Case [Appleyard v. Massachusetts,] 203 U.S. 222, 27 S.Ct. 122, 51 L.Ed. 161, 7 Ann.Cas. 1073], above cited, that a faithful, vigorous enforcement of the constitutional and statutory provisions relating to fugitives from justice is vital to the harmony and welfare of the States, and that `while a State should take care, within the limits of the law, that the rights of its people are protected against illegal action, the judicial authorities of the Union should equally take care that the provisions of the Constitution be not so narrowly interpreted as to enable offenders against the laws of a State to find a permanent asylum in the territory of another State.'
Considering the Constitution and statute and the declarations of this Court, we may not properly approve the discharge of the respondent unless it appears from the record that he succeeded in showing by clear and satisfactory evidence that he was outside the limits of South Carolina at the time of the homicide. Stated otherwise, he should not have been released unless it appeared beyond reasonable doubt that he was without the State of South Carolina when the alleged offense was committed and, consequently, could not be a fugitive from her justice.

*1010 The record discloses only a conflict of evidence; the requirement which we have indicated has not been met; and the challenged judgment must be reversed. (289 U.S. at 421, 422, 53 S.Ct. at 671, 77 L.Ed. at 1297).
Relying on these two cases we held, in Taylor v. Garrison, 329 So.2d 506 (Miss. 1976), the demanding state must show that (1) the person demanded is substantially charged with a crime under its jurisdiction, (2) he is a fugitive therefrom, (3) to be a fugitive from a demanding state, the person sought to be extradicted must have been within the state at the time the crime was committed, (4) one is not a fugitive if he establishes beyond a reasonable doubt that he was without the border of the demanding state at the time of the commission of the crime, and (5) a prima facie case is made out by the warrant of extradition issued by the governor of the asylum state. We also held in Bishop v. Jones, supra, that the question of fugitivity is an issue of fact and is within the scope of inquiry in a habeas corpus proceeding.
In this case, the issuance of an extradition warrant for petitioners by the Governor of Mississippi was prima facie evidence that the petitioners had been substantially charged and were fugitives from the demanding state. At the habeas corpus hearing the state introduced all of the documents pertaining to the extradition issued by the Governors of the States of Tennessee and Mississippi together with the indictment against petitioners. Petitioners then had the heavy burden of overcoming the prima facie case thus made out.
The only evidence offered by the petitioners was their testimony that they were in Ohio and not Tennessee on December 21, 1973. This case then presents the narrow question of whether the testimony of petitioners, standing alone, that they were not in Tennessee on the date of the crime charged in the indictment is sufficient to overcome the prima facie case made out by the Governor's extradition warrant. We do not find any case in which the United States Supreme Court has addressed this question, but the courts of Texas have held that the testimony of a petitioner or his spouse, or both, that he was not present in a demanding state at the time the crime charged was committed is not sufficient to rebut a prima facie case. Ex parte Harrison, 469 S.W.2d 571 (Tex.Cr.App. 1971); Ex parte Harvey, 459 S.W.2d 853 (Tex.Cr.App. 1970); Ex parte Sutton, 455 S.W.2d 274 (Tex.Cr.App. 1970); Ex parte Thomas, 393 S.W.2d 908 (Tex.Cr.App. 1965).
The reason for the rule is that any person demanded by a state could defeat extradition by merely denying that he was in the demanding state at the time the offense was committed. This would give such person the power to defeat extradition in any case.
We hold that the testimony of the petitioners, standing alone, was not sufficient to rebut the prima facie case that they were in the demanding state at the time the crime was committed.
Although petitioners did not assign as error, they argue that, if the crime was committed, it was committed in the State of Ohio and not in the State of Tennessee. The question of whether the crime was committed in Ohio as opposed to Tennessee is a defense involving a question of law and fact and is a jurisdictional question to be decided under the laws of Tennessee. This defense is beyond the limited issue permitted in a habeas corpus hearing in extradition cases. In Pierce v. Creecy, 210 U.S. 387, 28 S.Ct. 714, 52 L.Ed. 1113 (1908), the United States Supreme Court stated:
This court, in the cases already cited, has said, somewhat vaguely, but with as much precision as the subject admits, that the indictment, in order to constitute a sufficient charge of crime to warrant interstate extradition, need show no more than that the accused was substantially charged with crime. This indictment meets and surpasses that standard, and is enough. If more were required it would impose upon courts, in the trial of writs of habeas corpus, the duty of a critical examination of the laws of states with *1011 those jurisprudence and criminal procedure they can have only a general acquaintance. Such a duty would be an intolerable burden, certain to lead to errors in decision, irritable to the just pride of the states, and fruitful of miscarriages of justice. The duty ought not to be assumed unless it is plainly required by the Constitution; and, in our opinion, there is nothing in the letter or the spirit of that instrument which requires or permits its performance. (Emphasis supplied).
(210 U.S. at 405, 28 S.Ct. at 720, 52 L.Ed. at 1122).
The defense raised by petitioners should be properly resolved in the courts of Tennessee.
AFFIRMED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, WALKER, BROOM and LEE, JJ., concur.
NOTES
[1] OF TENNESSEE, COUNTY OF WASHINGTON
CRIMINAL COURT
 May Term, 1974
The Grand Jurors of the State of Tennessee, duly summoned, elected, empaneled, sworn, and charged to inquire in and for the body of the County aforesaid, in the state aforesaid, upon their oath, present that WILLIS JOHNSON AND BETTY JOHNSON heretofore, to wit, on or about the 21st day of December, A.D., 1973, in the County aforesaid, then and there did unlawfully, doing business as the City Club of Johnson City, Tennessee, by false pretense in violation of Tennessee Code Annotated 39-1901, defraud XYO Quip, Inc., Cincinnati, Ohio, of $45,000.00 in money by knowingly and with intent to defraud, furnish the said XYO Quip, Inc., a false and fraudulent financial statement dated November 1, 1973, claiming assets, free and unincumbered of approximately $600,000.00, consisting of real estate in the State of Mississippi, which assets, in fact, did not exist; further, defendants furnished said XYO, Quip, Inc., a false statement on a statement form of Coolidge Johnson, General Contractor, Johnson City, Tennessee indicating that Coolidge Johnson had expended $15,928.00 in labor and materials in building and installing a bar in the said City Club of Johnson City, Tennessee, when in fact, said statement is false and was not submitted by Coolidge Johnson.
Further, said XYO Quip, Inc., in executing a purchase-lease agreement with defendant in connection with the said City Club of Johnson City, believing above documents to be true and correct and relying thereon, on or about December 21, 1973, gave defendants $45,000.00 in money, causing XYO Quip, Inc., to purchase alleged property described in the statement on the false statement form of Coolidge Johnson, and to date no repayment to XYO Quip, Inc., has been made, and against the peace and dignity of the State of Tennessee
 (SIGNED) 
 Attorney General
_________________________________
 Assistant Attorney General