376 So.2d 641 (1979)
C. Gary CRUMPTON, Sheriff, State of Mississippi,
v.
Dr. William D. OWEN.
No. 51355.
Supreme Court of Mississippi.
September 5, 1979.
Rehearing Denied November 28, 1979.[*]
A.F. Summer, Atty. Gen. by Pete J. Cajoleas, Sp. Asst. Atty. Gen., Jackson, for appellant.
Travis Buckley, Laurel, for appellee.
Before ROBERTSON, P.J., and BROOM and COFER, JJ.
COFER, Justice, for the Court:
This is an appeal by C. Gary Crumpton, Sheriff of Smith County, from an adverse order of a habeas corpus court of that county, wherein as officer in charge of Dr. William D. Owen, Owen, relator, he was made respondent.
Relator-appellee Owen filed the petition alleging that he was being deprived of his liberty by respondent-appellant and had been, and then was, illegally confined and detained by respondent, in his physical custody. He further averred that his detention was pursuant to an extradition warrant issued by the Governor of this state, based upon a charge that relator was a fugitive from the justice of the State of Indiana, when in truth and fact, he was not such and under the United States Constitution, and the Laws of Mississippi, he ought not to be delivered up to the executive power of Indiana where the offense for which he was in custody was allegedly committed.
Appellant-respondent assigns for error that the habeas corpus court erroneously discharged appellee when the evidence clearly established his presence in the demanding state at the time when the conspiracy crime was committed, and when there was a conflict in the evidence on the fugitive issue as to the five remaining charges laid in the indictments returned by the grand jury of the demanding state.
On May 27, 1977, the Vanderburgh County, Indiana, Circuit Court Grand Jury returned *642 six indictments against relator charging criminal offenses, "contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Indiana," as follows:
(1) From on or about December 13, 1974, through and including the 14th day of October 1975, conspiring with Kenneth Eugene McCamish and Richard J. Russelburg, to commit the crime of possessing with intent to deliver a narcotic drug, hydromorphone, in an amount less than 10 grams;
(2) On or about June 21, 1975, delivering a narcotic drug, hydromorphone, to one Carolyn S. Baird;
(3) On or about June 21, 1975, delivering a narcotic drug, hydromorphone, to one Cynthia M. Gish;
(4) On or about July 4, 1975, delivering a narcotic drug, hydromorphone, to one Debra Hutchcraft Driskill;
(5) On or about July 5, 1975, delivering a narcotic drug, hydromorphone to one Debra Hutchcraft Driskill; and
(6) On or about July 6, 1975, delivering a narcotic drug, hydromorphone, to one Carolyn S. Baird.
On extradition request from the Governor of Indiana, the Governor of Mississippi, after hearing, duly issued rendition warrant, reciting that relator, having been indicted as hereinabove set out, had "fled from justice, and is to be found in the State of Mississippi, where he has taken refuge," and directing the Sheriff of Smith County or any other county, to arrest relator and deliver him to the custody of an agent designated by the Governor of Indiana, to be conveyed to the jurisdictional limits where he was charged. The warrant was issued on January 10, 1978, to respondent who took relator and, pursuant to the court's orders, released him on bond. The rendition warrant was introduced and is a part of the record.
At the conclusion of a long hearing, the judge stated that he did not understand that he was to adjudge the guilt or innocence of the accused, but he had the narrow restriction of the issue "as to where the relator was on June the 21st, July the 4th, 5th, and 6th of the year 1975." All agreed that the extradition proceeding and the Governor's rendition warrant were in order; that all jurisdictional facts necessary to the Governor's issuance of the warrant existed; and, in fact, the question of fugitivity of the relator was the lone matter for decision. The judge found the overwhelming legal, credible, and believable evidence was such as to convince him beyond a reasonable doubt, viewing the ex parte affidavits from Indiana and all the evidence adduced "with the dictates of a clear light of a conscience to guide this court," to be such that the petition for habeas corpus was granted and the relator-appellee was discharged. An order conforming to the opinion was entered on the 19th day of June, 1978.
The opinion in Taylor, Sheriff v. Garrison, 329 So.2d 506 (Miss. 1976), did much to collate the authorities and legal principles involved in extradition habeas corpus proceedings, and was used by the habeas corpus court for guidance in the trial and decision of the present case. In the present case the court and the parties put out of consideration the identity of the person sought in the proceeding, and that there was a crime sufficiently charged in the proceedings, leaving only the question of fugitivity of the relator, the indictee in the Indiana court.
In a long line of cases cited in the Garrison case, this Court held that the Governor's rendition warrant was prima facie evidence of the existence of every jurisdictional fact necessary to the Governor's determination; and that the Governor's warrant introduced in evidence made a prima facie case, placing upon the relator the burden of overcoming this prima facie case. We there held that fugitivity is a question of fact, and that
To be a fugitive from a demanding state, the subject person must have been within that state at the time the crime was committed. One is not such a fugitive if he establishes conclusively or beyond a reasonable doubt that he was without the borders of the demanding *643 state at the time of the commission of the crime. South Carolina v. Bailey, 289 U.S. 412, 53 S.Ct. 667, 77 L.Ed. 1292 (1933). (329 So.2d at 511).
Mississippi Code Annotated, section 11-43-39 (1972), one of the statutes in Chapter 43, Habeas Corpus, provides:
The judge or chancellor may issue or order subpoenas for witnesses and compel their attendance, as a circuit court could in term time, and fine witnesses or others for contempt. Whenever the personal attendance of a witness cannot be procured, his affidavit, taken on reasonable notice to the adverse party, may be received in evidence.
Appellee undertook to procure orders from the Indiana court to force certain witnesses, Cynthia Gish, Debbie Hutchcraft Driskill, and Kenneth Eugene McCamish, under authority of section 99-9-33, one of several sections which section 99-9-27 says may be cited as "[U]niform law to secure the attendance of witnesses from without the state in criminal cases." (Emphasis added). These efforts were denied by the Indiana court which, however, ordered the sheriff to produce Gish and Hutchcraft for deposing by relator's counsel when desired. McCamish was in jail and represented by counsel who refused permission to interview him.
While there in the effort to procure the court's order for their coming to Mississippi to testify, one of relator's counsel did succeed, in rather informal manner, in procuring statements of the women Driskill and Gish, and also of Linda K. Mattingly.
These statements were introduced over respondent's objection, in a hearing on relator's motion for a continuance. The statement of Mattingly was introduced by respondent later in the continuance hearing. In the hearing on the merits, affidavits of Joseph R. Rhodes, an Indiana law officer who had been active in the present investigation, and of the affiants Driskill, Gish, and Mattingly, were introduced by respondent over relator's objection. Later in the hearing a number of affidavits of Mississippi residents were introduced, over respondent's objection.
In Walden v. Mosley, 312 F. Supp. 855 (N.D.Miss., 1970), the Court held:
Ex parte affidavits may be, and customarily are, used in extradition proceedings. They make a prima facie case of the truth of their contents, or as stated by some cases, create a presumption that the crime charged was committed and that the person charged therein committed it, and can be rebutted only by clear and convincing evidence. [Citing Smith v. Idaho, 373 F.2d 149 (9th Cir., 1967); McEwen v. Mississippi, 224 So.2d 206 (Miss. 1969); Duaghterty v. Hornsby, 151 F.2d 799 (5th Cir.1945); United States ex rel. Vitiello v. Flood, 374 F.2d 554 (2nd Cir., 1967); and Tyler v. Pierce, 216 Miss. 498, 61 So.2d 309 (1952)].
(312 F. Supp. at 862).
The proof on relator's part, on the issue of fugitivity is required to establish that he was without the borders of Indiana at the time of the commission of the crime, this proof to be conclusive or beyond a reasonable doubt [Taylor v. Garrison, supra; South Carolina v. Bailey, 289 U.S. 412, 53 S.Ct. 667, 77 L.Ed. 1292 (1932)], or by clear and convincing evidence [Walden v. Mosley, supra].
Under our decisions, when the respondent introduced into evidence, the Governor's rendition warrant, he made out a prima facie case which had then to be met and overcome by relator by the weighty testimony noticed hereinabove. Respondent went further, however, as shown above, and, by his affidavit, showed that Rhodes' investigation led to the indictments against relator; that he had learned of the issuance of Delta Airlines tickets in relator's name on June 20, 1975, and July 4, 1975, from Jackson, Mississippi to Evansville, Indiana; and learned that relator was in Evansville on or about June 21, 1975, July 5, 1975, and July 6, 1975, and, through interviews with five persons named in the affidavit, that relator traveled from Raleigh, Mississippi, to Evansville, Indiana, on various occasions as alleged in the indictment. *644 He exhibited the airlines tickets to his affidavit. (Relator conceded that he made the reservations in furtherance of an undertaking in which he and McCamish, coindictee in the conspiracy charge, were engaged in obtaining coal rights in Indiana and northern Kentucky, but impediments kept him from using them and McCamish used them instead.)
In Debra Hutchcraft Driskill's sworn statement, she stated that she was then incarcerated in the Vanderburgh County Jail on a theft sentence; that she and McCamish went on July 4, 1975, and met relator at the airport; that she had met him before briefly, that they went to McCamish's house, 301 Washington in Evansville, and there relator gave her two dilaudid tablets; that relator came into contact that weekend with Richard Russelburg (likewise a coindictee in the conspiracy charge); that affiant went with McCamish to take relator back to the airport; and that on July 5, 1975, she was at McCamish's house with relator and McCamish.
Cynthia Gish's affidavit had relator in Evansville in June 1975, but she was not sure of the day of the month; she could be sure of one meeting with him at 301 Washington.
Linda K. Mattingly said in her sworn statement that she saw relator on the 4th of July 1975 weekend at 301 Washington. On questioning by one of relator's attorneys, she stated that she first met relator some time in June 1975, at 301 Washington; then again on July 5 or 6, probably the 5th, a Saturday; and that she knew relator was there that weekend for she saw him.
McCamish, in a long question and answer sworn statement, said he was then living in Mexico because he was under the conspiracy indictment and that relator was in Evansville, visited with affiant, "yes, but only two or three times during the period in question," relator visited him, he believed, "it was after he was back from Korea and out of the army in 1974, November or December, I believe;" during that period in question, relator visited him two or three times, he used airplane reservations made by relator "a couple of times," could only be sure of one date, the 4th of July 1975 weekend.
In rebuttal testimony Kent McDaniel, Southern Mississippi Area Commander with the Mississippi Bureau of Narcotics, said that he, with Joe Rhodes and Vanderburgh County prosecutor Bill Brunie, on September 20, 1976, had a conference with relator at relator's desire, concerning the Indiana investigation; remembered rather hazily the conference, having refreshed his memory by Rhodes, and, in his testimony, he said that relator told them that among other visits with McCamish in Evansville, Indiana, was one "in Christmas of '74."
The record is silent, on the merits, as to his being or not being in Indiana from on or about December 13, 1974, through October 14, 1975, except for the June and July 1975, periods to which the other five indictments applied. (He had testified in his motion for a continuance that, during the span of time included in the conspiracy indictment, "I was probably there once or twice during that period," "two or three" "What do you mean? That  well, I was there a couple of times during the period. I never said I wasn't.")
Relator is a physician and surgeon practicing in an area where there are few doctors. Patients of his rallied to his support as to his not being in Indiana July 20-22, 1975, and July 4-6, 1975. Many of these were patients in the hospital where he was chief of the medical staff. They had remarkable recall, but no doubt were refreshed by their charts. We do not imply that they were dishonest in their testimony. The medical records of some of these patients bore entries in such a way that conclusion might be made that they were afterthoughts. July 5, 1975, was especially vivid in relator's mind, for, on that day, (McCamish had used his plane ticket of July 4), he went fishing with Mr. Garner; in doing so, he went to another county to obtain beverages unavailable in Smith County; he had a difficult time talking a highway patrolman out of giving him a traffic ticket (he and the officer, or an *645 officer he brought to the stand, could not identify each other as being involved); relator wrote a check for some of the expenses of his fishing companion which was put in the latter's tackle box, never negotiated, was produced on the hearing, and is a part of the record, are some of the events that he remembered of that day.
As to the dates involved in the indictments other than the conspiracy charge, we can at least say there was a conflict in the testimony, in sworn statements from Indiana and that of the live witnesses.
Looking now at the testimony for the entire period in question, there appears in the record disregard by relator and the court of the conspiracy charge, and relator's activity during that long period. When the court reached his opinion stage, he said his narrow issue for decision was "as to where the relator was on June the 21st, July the 4th, 5th, and 6th of the year 1975."
We note again that relator is not on trial here on any of the indictments. It is recognized by the parties that the conspiracy indictment covers months of time. If relator was in Indiana during any of this period, then, on his departure, he became a fugitive from the justice of that state. The relator-appellee concedes that "obviously, the appellee would not have to be in the state at all times in order to engage in a conspiracy."
It is our conclusion that the rather sparse proof in the record establishes that relator was in Indiana at Christmas 1974 and other times, and utterly fails to show that he was not in that state any time during the crucial period.
We are duly impressed by the proof which would negate relator's presence in Indiana during the June  July periods involved. There is proof in the affidavits, aiding the prima facie case of the Governor's rendition warrant, which, if we were deciding the guilt or innocence of relator, might be regarded as less than impressive. The conflict here, however, is whether relator has an alibi which will establish his non-guilt in Indiana, and we must leave that defense to be resolved in the demanding state. Taylor v. Garrison, supra.
We conclude that the habeas corpus court was in error in sustaining the petition for habeas corpus, and the judgment is reversed, the habeas corpus writ is quashed, and relator-appellee is ordered into the custody of the respondent sheriff for delivery according to the Governor's rendition warrant.
REVERSED AND RENDERED.
SMITH and ROBERTSON, P. JJ., and SUGG, BROOM, LEE and BOWLING, JJ., concur.
PATTERSON, C.J., and WALKER, J., took no part.
NOTES
[*] Rehearing denied; Patterson, C.J., and Walker, J., took no part in the decision.