PITTMAN, Justice,
for the court:
This case is one of first impression involving the interpretation of extradition proceedings found in Miss.Code Ann. § 7-1-25 (1972, as amended). The Circuit Court of Wilkinson County, Mississippi, granted the Writ of Habeas Corpus filed by Jennings and Cathy McCurley. The petitioners sought relief from the proceedings initiated by the State of Louisiana for the extradition of Jennings and Cathy McCurley based upon charges of issuing worthless checks in the State of Louisiana. Aggrieved by the lower court’s holding, the State of Mississippi has appealed to this Court. After considering the excellent briefs submitted by both parties as .well as the applicable law, we find that the lower court was in error in not extraditing Jennings and Cathy McCurley to Louisiana so that they may face charges of issuing worthless checks. The proper forum to hear these charges lies in Louisiana and not Mississippi. We therefore reverse and render the lower court’s decision.
I.
Jennings and Catherine McCurley owned Sports Unlimited, a convenience store in Woodville, Mississippi. Since Woodville is near the Mississippi/Louisiana state line, it is not uncommon for a business to have dealings in both states. Sometime in 1983 or *341 1984, a representative from Wilcox Oil Company, a petroleum products distributor from nearby St. Franeisville, Louisiana, approached the owner of the building housing Sports Unlimited about selling Wilcox Oil’s petroleum products. Following the owner’s agreement, Wilcox Oil installed underground oil tanks and pumps on the premises. The installed fixtures remained the property of Wilcox Oil and the McCurleys acted as commission agents for the oil company. On every Monday, a Wilcox Oil representative would deliver gasoline to Sports Unlimited, and the McCurleys would in turn write a check to Wilcox Oil for the amount of the gasoline sold the previous week. Wilcox Oil would figure out the McCurleys’ sales commission and remit a check to them shortly thereafter.
This course of dealing continued without problems until January of 1988, when Sports Unlimited began to encounter financial difficulties. The McCurleys’ weekly checks to Wilcox Oil began to be returned by Wilcox Oil’s bank in Louisiana for insufficient funds. Each time this happened, Wilcox would run the cheeks through another time in the hopes that the necessary funds would be available. However, the cheeks were often dishonored a second time, requiring that the McCurleys issue new checks. Things became so bad that Wilcox Oil began sending a representative out to Sports Unlimited on a daily basis in order to collect the receipts from the previous day. Usually Wilcox Oil would receive a check from the McCurleys when they delivered more gasoline. However, on September 6,1988, the McCurleys’ oldest daughter drove to the company’s headquarters in St. Franeisville with several checks to cover dishonored ones. It was several of these checks that led to Wilcox Oil’s filing of criminal affidavits against the McCurleys.
After receiving fifty-eight returned checks, the McCurleys’ debt to Wilcox Oil totaled $42,000.00. The McCurleys were able to pay $5,000.00 towards the balance, but $38,847.67 of the debt still remained. In an attempt to secure its financial position, Wilcox asked that the McCurleys sign a promissory note for the amount of the outstanding debt. The McCurleys executed the promissory note, gave Wilcox Oil a second lien on its inventory and accounts receivable, gave Wilcox Oil a third mortgage on their home, and assigned its lease to them. The promissory note was reduced by the McCurleys’ endorsement of their commission cheek back to Wilcox Oil. When the McCurleys closed the doors of their business, $17,000 had been paid on the promissory note. The McCurleys filed bankruptcy soon thereafter. Because Wilcox Oil stood behind the first lienholder with regard to Sports Unlimited’s accounts receivable and inventory, the company received nothing in the form of additional payment.
Rather than attempting to collect on the promissory note, Clifford Wilcox turned six returned checks over to the West Feliciana Parish Assistant District Attorney in order to institute criminal proceedings against the McCurleys. Wilcox signed affidavits charging both Jennings and Catherine McCurley with issuance of worthless checks in violation of 14:71 of the Louisiana Code R.S. and listed the amounts of each worthless check on the affidavit. The Assistant District Attorney then prepared and submitted documents requesting the McCurleys’ extradition to then-Governor Buddy Roemer of Louisiana for his signature. These documents were sent to then-Govemor Ray Mabus of Mississippi.
An extradition hearing was held by then-Governor Mabus, where it was determined that the extradition documents were improper on their face. Apparently the affidavits filed by Clifford Wilcox stated that the crime occurred in Louisiana, while the warrant and request for extradition documents stated that the crime had occurred in Mississippi. New documents were drafted and filed with then-Governor Mabus, who ordered that the McCurleys be arrested. After being taken into custody, the McCurleys filed a Writ of Habeas Corpus, challenging the validity of their detention. Circuit Court Judge Richard Watson granted the McCurleys’ petition, thereby releasing them from custody. From this decision, the State of Mississippi appeals on the following grounds:
*342 I. THE TRIAL COURT COMMITTED ERROR WHEN IT IMPROPERLY TRAVERSED THE BOUNDS OF THE HEARING ON WRIT OF HABEAS CORPUS BROUGHT RELATIVE TO THE EXTRADITION OF JENNINGS AND CATHY MCCURLEY UPON RULING THAT NO CRIME HAD BEEN COMMITTED IN EITHER MISSISSIPPI OR LOUISIANA.
II. THE TRIAL COURT COMMITTED ERROR IN ITS FINDINGS THAT THE LEGAL DOCUMENTS IN THIS MATTER WERE IMPROPER ON THEIR FACE.
III. THE TRIAL COURT COMMITTED ERROR IN CONSIDERING THE ISSUE OF FUGITIVITY, THEREBY IGNORING THE APPLICATION TO THIS CASE OF § 7-1-25(2), WHICH MAKES THE ISSUE OF FUGITIVITY IRRELEVANT.

Lower court’s findings.

At the habeas corpus proceedings, the trial judge found that the court was bound by Allen v. State, 515 So.2d 890 (Miss.1987). Judge Watson found the request for extradition documents to be improper on its face because Wilcox’s affidavit was in conflict with the extradition documents filed by the Governor of Louisiana. The judge further found that no crime existed in either Mississippi or Louisiana because the parties executed a promissory note and security agreements to replace the worthless checks. Athough the judge found the petitioners to be the persons named in the request for extradition documents, he determined them not to be fugitives since they were not in the State of Louisiana at the time of the alleged crimes.
II.

Did the lower court err in granting the McCurlegs’ Writ of Habeas Corpus?

Interstate extradition of fugitives is a matter of federal law, originating in article IV, § 2 of the United States Constitution, which states:
A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.
Federal extradition law was later codified in 18 U.S.C.A. § 3182 (1969), stating:
Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of arrest, the prisoner may be discharged.
Individual states have been granted the right to enact their own extradition laws as long as these laws in no way impair federal extradition law. Many states have exercised this legislative right and have passed individual extradition laws. Other states have adopted the Uniform Criminal Extradition Act. To date, Mississippi has not adopted the Uniform Criminal Extradition Act, but has enacted individual extradition statutes. See Miss.Code Ann. § 7-1-25 (1972, as amended). In Loper v. Dees, 210 Miss. 402, 49 So.2d 718 (1951), this Court held that Mississippi statutes relating to ha-beas corpus and interstate extradition are not applicable except to the extent that they may be in aid of and not inconsistent with the Constitution and laws of the United States on the question. Id., 210 Miss. at 410, 49 So.2d *343 at 720; see also Bishop v. Jones, 207 Miss. 423, 439, 42 So.2d 421, 422 (1949).
This appeal involves the interpretation of a subsection of Miss.Code Ann. § 7-1-25, which states:
(1) It shall be the duty of the governor, on demand made by the executive authority of any other state, territory or district for any person charged, on affidavit or indictment in such other state, territory or district, with a criminal offense and who shall have fled from justice and be found in this state, the demand being accompanied with a copy of the affidavit or indictment certified as authentic by such executive authority, to cause the offender to be arrested and delivered up to the authority of such state, territory or district for removal to the jurisdiction having cognizance of the offense, upon payment of the costs and expenses consequent on arrest; and it shall be the duty of the governor to demand and receive fugitives from justice for offenses committed in this state.
(2) The governor may also surrender, on demand of the executive authority of any other state, any person to be found in this state who stands charged in the manner provided in subsection (1) of this section with committing an act in this state, or in a third state, intentionally resulting in a crime in the state whose executive authority is making the demand.
Miss.Code Ann. § 7-1-25 (1972, as amended) (Emphasis added).
Subsection (1) clearly mandates that upon the filing of proper extradition documents with the governor of this state, the fugitive offender should be arrested and turned over to the demanding state. This subsection is applicable to situations where the criminal act was committed in the demanding state and the offender has fled to Mississippi. Conversely, the statute allows the governor of this State to demand and receive fugitives who have committed offenses in Mississippi but have fled this State.
Subsection (2) is the area of dispute requiring interpretation. Although the wording in subsection (2) is permissive in nature, it addresses situations where an act is committed in either Mississippi or in a third state, which intentionally results in a crime in the demanding state. This language applies to persons who are “non-fugitives,” i.e., not present in the demanding state when the intentional act was performed, but when the effects or results of that person’s acts constitute a crime in the demanding state. This section recognizes the theory of “constructive presence,” wherein a person can commit a crime in a demanding state without actually being physically present in that state.
In the present case, the MeCurleys issued Wilcox Oil checks representing the proceeds of gas sales at their convenience store. In almost every instance, the checks were picked up at the MeCurleys’ store on Monday mornings when the supply of gasoline for that week was delivered. Both parties agree that neither Jennings or Catherine McCurley ever delivered a check to Wilcox Oil in St. Francisville, Louisiana. However, evidence was presented at the habeas corpus hearing which showed that on September 6,1988, the MeCurleys’ oldest daughter drove to Wilcox Oil’s office for the purpose of delivering four new checks to replace the ones that were previously denied twice, when deposited in Wilcox Oil’s account in St. Francisville. Apparently, this was the only occasion in which either Wilcox or one of his representatives did not receive a check from the MeCurleys in Mississippi.
The MeCurleys argue that they were not present in Louisiana at the time of the alleged crime and therefore cannot be classified as fugitives under Mississippi case law. They further contend that § 7-1-25(2) is not applicable to the present case because the issuance of worthless checks was not an intentional act as required by § 7-1-25(2). The MeCurleys claimed that they often told Wilcox at the time they gave him cheeks that there was a possibility that sufficient funds were not in the account to cover the checks. It was understood that if the check did not clear the first time, Wilcox was to run it through his bank a second time. In the event that the check still did not clear, the MeCurleys would issue a new one to Wilcox.
Assuming, arguendo, and accepting the MeCurleys’ claim that the statute re *344 quires an intentional act which results in a crime in the demanding state, the evidence clearly shows that Jennings McCurley was aware that the check he issued might not clear when Wilcox deposited it in the company’s account in St. Francisville. In fact, he told Clifford Wilcox to run it through the bank a second time if it did not clear the first time. Although McCurley did not want the check to bounce, he intentionally gave it to Wilcox and was at times aware that funds were unavailable to cover the check.
Much of the McCurleys’ argument against extradition rests on their claim that no crime was committed in either Mississippi or Louisiana. The McCurleys assert that their execution of the promissory note and additional security agreements constituted a novation, thereby replacing the dishonored checks. The judge at the habeas corpus hearing followed this same reasoning. However, it appears that both the trial judge and the McCurleys missed the point of extradition proceedings. In California v. Superior Court of California, 482 U.S. 400, 107 S.Ct. 2433, 96 L.Ed.2d 332 (1987), the United States Supreme Court defined extradition as a summary procedure, stating:
The language, history, and subsequent construction of the Extradition Act make clear that Congress intended extradition to be a summary procedure. As we have repeatedly held, extradition proceedings are “to be kept within narrow bounds”; they are “emphatically” not the appropriate time or place for entertaining defenses or determining the guilt or innocence of the charged party.
482 U.S. at 406, 107 S.Ct. at 2438, 96 L.Ed.2d at 340.
In terms of Mississippi case law, extradition is not intended as a preliminary inquiry into the merits of a criminal prosecution. Instead, it is a summary executive proceeding by which a criminal accused can be brought before the appropriate tribunal for adjudication. Garrison v. Smith, 413 F.Supp. 747, 752 (N.D.Miss.1976). It is a well established rule that it is not for courts in the asylum state to inquire into the constitutionality of a sister state’s criminal justice system. Id. at 753. Therefore, it has been widely held in both state and federal courts that courts in the asylum state are not to question whether the warrant for a fugitive’s arrest is supported by probable cause. Id. The rationale behind this reasoning is that the constitutional rights of the accused are guaranteed and safeguarded by the state and federal courts of the demanding jurisdiction. Id. at 754.
The McCurleys may in fact be correct in their assertion that a novation replaced the dishonored checks and therefore negated any crime. However, this question is not one for Mississippi courts to decide. The proper forum to make such resolution is a court in the demanding state rather than a court in the asylum state. Taylor v. Garrison, 329 So.2d 506, 511 (Miss.1976). The McCurleys would be able to assert all relevant defenses in Louisiana. Although Mississippi has an important state interest in protecting its citizens from unjust removal from its borders, we must not forget the state’s duty under federal extradition law. Due process as we know it in Mississippi also exists in Louisiana. Therefore the McCurleys’ defense of novation can certainly be raised there.
In conducting extradition proceedings in this state, a trial court has a limited scope of review. A court considering habeas relief is allowed to review:
(A) Whether the extradition documents on their face are in order;
(B) Whether the petitioner has been charged with a crime in the demanding state;
(C) Whether the petitioner is the person named in the request for extradition; and
(D) Whether the petitioner is a fugitive.
Allen, 515 So.2d at 891 (quoting Michigan v. Doran, 439 U.S. 282, 288, 99 S.Ct. 530, 535, 58 L.Ed.2d 521, 527 (1978).
The McCurleys also argue that Mississippi courts have the power to look behind the extradition documents filed by the State of Louisiana in order to determine the sufficiency of probable cause. Although a minority position in other jurisdictions, there is a growing trend requiring an affirmative showing of probable cause for arrest by the demanding state before extradition may be ac *345 complished. Garrison v. Smith, 413 F.Supp. 747, 754 (N.D.Miss.1976). However, the Garrison Court clearly rejected this minority position, stating:
[w]e cannot accept the interpretation that an extradition request based on an accusatory affidavit, along with an arrest warrant issued by a judicial officer, cannot be honored under § 8182 unless charging documents set out facts which support an independent finding of probable cause satisfactory to asylum state courts.
Id., 413 F.Supp. at 756. When the charge accompanying the requisition is in the form of an affidavit, several jurisdictions have required a showing that it be supported by Fourth Amendment standards of probable cause. Taylor, 329 So.2d at 510.
In Corkern v. State, 269 So.2d 630 (Miss.1972), this Court stated in dicta that a habeas corpus court may examine the evidence presented to the magistrate issuing the warrant concerning the presence of probable cause. The argument in Corkem related to the form and content of the document rather than to the actual facts of the case. No issue of probable cause as to the evidence presented before the magistrate was decided in the Corkem case. Therefore, any dicta stated in Corkem is not controlling in the case at bar. Further, in McEwen v. State, 224 So.2d 206 (Miss.1969), this Court held that a mere telegram from the demanding state, as opposed to an affidavit in this case, would give reasonable enough grounds to cause the alleged offenders to be arrested. Id. at 207.
Finally, the lower court erred when it held that Wilcox initiated criminal proceedings in order to collect a civil debt. Assuming, arguendo, that this is true, Mississippi courts are not the proper forum for the McCurleys to be raising their defenses. Rather, the Mississippi court’s inquiry should focus on summary procedure of extradition, not on the merits or legal sufficiencies of the demanding state’s claims. Taylor, 329 So.2d at 511.
III.

Were the documents improper on their faces?

The general rule regarding extradition in this state is that when a governor from a demanding state requisitions extradition and certifies that the respondent committed the crime while in the demanding state, and that the duly authenticated accusatory document is genuine and states a crime under the laws of that state, such facts authorize the arrest and extradition of the defendant. Taylor, 329 So.2d at 510. The introduction of the Governor’s extradition warrant creates a presumption that all the requirements for extradition have been met. Allen, 515 So.2d at 891; Crumpton v. Owen, 376 So.2d 641 (Miss.1979). Once this prima facie showing has been made, it is the appellant’s burden to prove he is not the person wanted or was not in the demanding state at the time of the crime. Allen, 515 So.2d at 892.
In Walden v. Mosley, 312 F.Supp. 855 (N.D.Miss.1970), the district court held:
Ex parte affidavits may be, and customarily are, used in extradition proceedings. They make a prima facie case of the truth of their contents, or as stated by some eases, create a presumption that the crime charged was committed and that the person charged therein committed it, and can be rebutted only by clear and convincing evidence, [citations omitted]
312 F.Supp. at 862.
This Court stated in McEwen that “it would ill behoove us in the face of the certificate of the Governor of Indiana and the actions of the prosecuting attorney to say that the affidavit was insufficient under the laws of Indiana to state a crime or to authorize extradition.” 224 So.2d at 208. Likewise in Corkem, this Court held that a bill of information is “sufficient to order an interstate extradition of a fugitive when a bill of information is recognized by the demanding state as being sufficient to charge the fugitive with the crime therein set forth.” 269 So.2d at 632. (Emphasis added).
In Johnson v. Ledbetter, 348 So.2d 1007 (Miss.1977), this Court found that the testimony of the petitioners, standing alone, was not sufficient to rebut the prima facie case that they were in the demanding state at the *346 time the crime was committed. Id. at 1010. The reasoning behind this determination was that any person demanded by a state could defeat extradition by merely denying that he was in the demanding state at the time the crime was committed. Id.
In the present case, the trial court ruled that the extradition documents filed by the Governor of Louisiana were improper on their face because the affidavits alleged that a crime had been committed in Louisiana while the warrant and request for extradition stated that the crime was committed in Mississippi. However, the affidavits did not contain information about the location of the McCurleys at the time the alleged crime was committed. The pertinent language of the affidavits is as follows:
Personally came and appeared before me, .Clifford Wilcox, Jr. For Wilcox Oil who, having been by me duly sworn, did depose and say: That one Jennings F. McCurley, willfully and unlawfully Violated RS 14:71 in that he issued worthless checks — 3 counts — on September 6, 1988 payable to Wilcox Oil in the amount of $5133.23, $5713.49, and $6186.32 totaling $17,233.04 within this State and Parish, and the Jurisdiction of the Twentieth Judicial District Court, contrary to the form of the statutes of the State of Louisiana in such case made and provided, and against the peace and dignity of the same.
The affidavit charging Catherine McCurley with the same crime contains the exact language as the one above except that her name was substituted for that of her husband. The charge against the McCurleys does not state that the crime took place within the borders of Louisiana, but that the Louisiana statute was violated. Any discrepancies or flaws in the extradition documents were corrected as a result of initial extradition hearing in which the Governor of Mississippi found the documents to be improper on their face. The State of Louisiana submitted corrected documents which the Governor of Mississippi signed, authorizing the arrest and extradition of the McCurleys.
The foregoing case law indicates that the charging instrument in the present case sufficiently charges a crime as well as being technically sufficient in form. The attached affidavits merely state that a crime was committed in Louisiana and nothing more. Finally, the affidavits were sworn before a neutral Louisiana judge who signed warrants for the McCurleys’ arrest after a showing of probable cause.
IV.

Are the McCurleys fugitives?

A fugitive for extradition purposes has been defined as one who has committed a crime in the demanding state while physically present in that state and who has since fled that state. Allen, 515 So.2d at 891; Crumpton, 376 So.2d at 642. However, one is not a fugitive if he establishes beyond a reasonable doubt that he was without the border of the demanding state at the time of the admission of the crime. Allen, 515 So.2d at 891; Crumpton, 376 So.2d at 642—43; Johnson, 348 So.2d at 1010. Clearly the question of fugitivity is within the scope of inquiry of the habeas corpus court. Taylor, 329 So.2d at 511; Bishop v. Jones, 207 Miss. 423, 42 So.2d 421 (1949).
In Cassis v. Fair, 126 W.Va. 557, 29 S.E.2d 245 (1944), the West Virginia Supreme Court addressed a similar factual scenario involving a nonresident delivering a bad check to a West Virginia resident. The defendant in that case argued that he was not subject to extradition because he was not present in West Virginia at the time the crime was committed and therefore was not a fugitive. The West Virginia Supreme Court did not agree with the defendant and upheld the extradition statute stating:
The Federal Constitution merely provides that one charged with crime who shall flee from justice shall be rendered up by the state in which he is found, to the authorities of the state from which he fled. It in no sense purports to limit extradition to these cases. It does not forbid a state to yield up to another state one charged with crime who has not in fact fled from that other state. No reason in law, expediency or comity has been suggested why extradition should be limited to those who were physically in the state at the time the *347 crime was committed. Many crimes may be committed in a state while the culprit remains without its borders. This is particularly true where such offender acts through an agent or conspirator. Certainly one may commit the offense of uttering or delivering a bad check in a state without being physically therein.
Id. 29 S.E.2d at 248. (Emphasis added).
Likewise, in People v. Dooley, 156 A.D.2d 406, 548 N.Y.S.2d 532 (1989), the New York Supreme Court, Appellate Division, upheld the extradition of a defendant who violated the Georgia bad cheek statutes despite not being physically present in Georgia at the time the crime was committed. The Court stated:
Although the petitioner did not actually draw the checks in question, the evidence was sufficient to establish that he caused the checks to be issued by his wife.... Furthermore, it is clear from the record that the petitioner knew that there were insufficient funds to cover the subjéct checks at the time of utterance.
The evidence also established that the petitioner intended or believed at the time of utterance that payment would not be made when the checks were presented.
Id. 548 N.Y.S.2d at 533; see also People v. Holtzman, 91 A.D.2d 983, 457 N.Y.S.2d 575, 576 (1983).
The foregoing case law illustrates other jurisdictions’ acceptance of the theory of “constructive presence.” Both New York and Indiana have enacted statutes similar to Miss.Code Ann. § 7-1-25(2), which permit extradition of persons committing crimes which violated the demanding states criminal statutes while not being physically present in the demanding state. These statutes in no way offend federal extradition law, rather, they complement it. The trial judge strictly applied the four factors set forth in Allen, and gave much deference to the fact that the McCurleys were not fugitives. However, the judge ignored the intent of the legislature when they enacted § 7-1-25(2). Such strict application of the Allen factors results in a demanding state being unable to protect its own citizens from the criminal acts of nonresident persons. To hold such would frustrate the purposes for which extradition law was enacted. The theory of constructive presence as found in § 7-1-25 alters the requirement of fugitivity which is traditionally found in criminal settings. In conclusion, we reiterate that Mississippi courts are not the proper forum for the parties to air their claims. The McCurleys will be able to assert the same defenses in Louisiana as they could in this State. It is not the function of this Court in this case to pass judgment on their guilt or innocence. We therefore reverse and render the lower court’s decision.
REVERSED AND RENDERED.
HAWKINS, C.J., PRATHER, P.J., and BANKS, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
MeRAE, J., dissents with separate written opinion joined by DAN M. LEE, P.J., and SULLIVAN, J.