McRAE, P.J.,
Dissenting:
¶ 30. The majority, in its fourteen-page diatribe, tries to circumvent its previous holding in State v. McCurley, 627 So.2d 339 (Miss.1993), which is undeniably similar to this case. The majority says that Sonkin was not given a hearing, when in fact, he was given a hearing. We are to base our decisions on the record. In this case, Sonkin was given a hearing, and it was concluded that the documents on their face were proper and that the court had to honor the extradition. Some of the factual scenarios to which the majority alludes as being in dispute, are the same factual scenarios that occurred in the McCurley case involving the same situation. Id. at 344. What the majority fails to recognize is that Sonkin had a hearing. Sonkin did not proffer any evidence outside of the hearing. For the majority to say that he did not have a hearing is disingenuous; he did. Can Sonkin make a record of any further discrepancies that are not included in the McCurley case? I think not.
¶ 31. I dissent from the majority as it attempts to carve out an exception to, instead of overruling, its decision in McCur-ley, a case that is almost identical to this one. Id. The majority’s attempt to distinguish between the mailing of a check as opposed to having someone take the check over to another state and between checks returned for insufficient funds and checks on which payments were stopped is disingenuous. In either situation, the jury of the demanding state must decide the substance of the charges. Because of McCurley, supra, and our statute on extradition, Miss.Code Ann. § 7-1-25, in conducting extradition proceedings in Mississippi, a trial court has a limited scope of review:
(A) Whether the extradition documents on their face are in order;
(B) Whether the petitioner has been charged with a crime in the demanding state;
(C) Whether the petitioner is the person named in the request for extradition; and
*573 (D) Whether the petitioner is a fugitive. Allen v. State, 515 So.2d 890, 891 (Miss.1987) (quoting Michigan v. Doran, 439 U.S. 282, 288, 99 S.Ct. 530, 535, 58 L.Ed.2d 521, 527 (1978)).
¶ 32. In McCurley, a representative of a gas distributor came to Mississippi and approached the McCurleys about selling their petroleum products. The check for the petroleum products was picked up by the truck driver every Monday when he made his delivery. McCurley, 627 So.2d at 341. The McCurleys’ daughter delivered four checks to the distributor in Louisiana for payment. The checks in McCur-ley were not honored by the bank due to insufficient funds. Id. In this case Sonkin ordered materials that were to be shipped out of Arkansas and delivered to Mississippi, and the check was mailed to Arkansas to cover the purchase price upon arrival of the lumber. Payment was stopped on the first check due to an incorrect amount, and a subsequent check was issued. Payment was stopped on the second check when the lumber in question was discovered to be non-conforming and unsuitable for the purpose for which it was intended, building furniture. Sonkin placed the lumber in storage and notified Richards to pick up the lumber. In the McCurley case, the majority stated that the documentation was proper and that the McCurleys would have to fight the charge in Louisiana. Id. at 345. Likewise, Sonkin must face the charge in Arkansas.
¶ 33. In California v. Superior Court, 482 U.S. 400, 107 S.Ct. 2433, 96 L.Ed.2d 332 (1987), the United States Supreme Court defined extradition as a summary procedure stating: “The language, history, and subsequent construction of the Extradition Act make clear that Congress intended extradition to be a summary procedure. As we have repeatedly held, extradition proceedings are ‘to be kept within narrow bounds’; they are ‘emphatically’ not the appropriate time or place for entertaining defenses or determining the guilt or innocence of the charged party.” Id. at 406, 107 S.Ct. at 2438, 96 L.Ed.2d at 340.
¶ 34. According to Mississippi case law, extradition is a summary executive proceeding by which an alleged criminal can be brought before the appropriate tribunal. Garrison v. Smith, 413 F.Supp. 747, 752 (N.D.Miss.1976). It is not for courts in the asylum state to inquire into the constitutionality of another state’s criminal justice system. Id. at 753. Therefore, the asylum state is not to question whether the warrant for the fugitive’s arrest is supported by probable cause. Id. The accused’s constitutional rights are guaranteed by the courts of the demanding jurisdiction. Id. at 754. Sonkin may be right in his assertion that he may not have committed a crime at all. However, this is not a question for our courts to decide. The issue is whether the extradition should be upheld, not whether Sonkin is innocent or guilty. The proper forum for this to be decided is a court in the demanding jurisdiction, not the asylum state. See Taylor v. Garrison, 329 So.2d 506, 511 (Miss.1976). Although Mississippi has an important state interest in protecting its citizens from removal to other jurisdictions unjustly, we must not forget the state’s duty under federal extradition law. See McCurley, 627 So.2d at 344.
¶ 35. In McCurley we said the McCurleys had to go to Louisiana and face the charge. It was a legitimate charge from our analysis; it was a crime. The documentation was in order and they were the particular people who were named and requested in the extradition papers. In effect, the petitioners were constructive fugitives. We must either overrule McCurley or follow it, not carve out excep *574 tions. We should be consistent. As stated previously, in conducting extradition proceedings in Mississippi, a trial court has a limited scope of review. Allen, 515 So.2d at 891. In the case at bar, the petitioner has not been denied his rights under the Fourth or Fourteenth Amendments. He has been charged with a crime in Arkansas; he is the person named in the request, and according to Miss.Code Ann. § 7-1-25(2) and our holding in McCurley, he is a fugitive.
¶ 36. The majority in McCurley, in effect, said that the McCurleys had to face the charges in Louisiana, and by the same token Sonkin should have to face the charges in Arkansas. It is true that I dissented in McCurley, and questioned the applicability of a criminal statute to a civil proceeding. See Blue Bonnet Creamery, Inc. v. Gulf Milk Ass’n, 172 So.2d 133, 139 (La.Ct.App.1965). This, too, is a civil matter using the criminal process to collect the debt, but the majority ruled as to the actual criminal charge in McCurley and said that the trial court was limited in its scope to the four elements presented in Doran, 439 U.S. 282, 288, 99 S.Ct. 530, 535, 58 L.Ed.2d at 527. I therefore dissent from the majority’s attempt to make an exception to McCurley and the majority’s failure to follow it or overrule it. One can only wonder why the majority sends this case back for another hearing when one has already been held.
¶ 37. Accordingly, I dissent.
WALLER, J., JOINS THIS OPINION IN PART.