MeRAE, Justice,
dissenting:
Having reviewed the record and the law in this case, I am persuaded that the majority has come away from this “case of first impression” with the “wrong impression.” Because the circuit judge correctly ruled on the matters properly before him in the habeas proceeding, I dissent.
In Michigan v. Doran, 439 U.S. 282, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978), the United States Supreme Court defined the scope of review for a court considering habeas corpus relief. Review is limited to whether the extradition documents are in order; whether the petitioner has been charged with a crime in the demanding state; whether the petitioner is the person named in the extradition request; and whether the petitioner is a fugitive from the demanding state. Allen v. State, 515 So.2d 890, 891 (Miss.1987) citing Doran, 439 U.S. at 288, 99 S.Ct. at 535, 58 L.Ed.2d at 527. In an agreed judgment and writ, approved by the Special Assistant Attorney General as well as by petitioner’s counsel, the circuit judge found that the extradition documents were not in order; that “neither the Governor of the demanding State nor the Governor of the asylum State exercised informed legal discretion to re *348 quest or surrender the Petitioners,” and further, that the checks complained of had been “abrogated” by a new agreement between the parties; and finally, that the McCurleys were not fugitives from Louisiana.
The habeas judge must first determine whether a crime has been committed. A look at Louisiana law shows that the McCur-leys committed no crime in Louisiana. They were charged with violating La.Rev.Stat.Ann. § 14:71. However, at the time of the alleged crime, cheeks written as payments on “open accounts” and antecedent debts were expressly exempted from the dictates of the statute. La.Rev.Stat.Ann. § 14:71(A)(1) and Reporter’s Comments. The Louisiana Attorney General’s Office was presented with the following scenario:
A distributor delivers a load of fuel to a local store. The fuel is placed in a storage tank at the store. The storage tank and the gas pumps at the store are owned by the distributor. A customer comes to the store and fills his ear up with fuel and pays the store for the gas. The gas pump registers how much fuel was pumped. The distributor goes by the store once a week or every two weeks and checks the pumps to determine how much fuel the store has sold. He then requests payment from the store for the amount of fuel sold by the store that week. The store owner writes a check for the amount of the gas used for that week and the check is not honored by the store’s bank because it is an “NSF” check.
Op. La. Att’y Gen. No. 87-444 (1987). It is indistinguishable from the facts of the case sub judice. The Louisiana Attorney General’s Office found that “worthless cheeks issued to fuel distributors on a weekly or bimonthly account of past fuel sales by their store-customers on open accounts do not fall within the purview of LSA-R.S. 14:71.” Id. Citing the Reporters Comment as well as cases where “open accounts” are discussed in the civil context, the opinion found that:
“Open account” is a legal term of art. Besides being used in the statute above, the term also appears in LSA-R.S. 9:2781 wherein a definition is provided for the purposes of that section: “‘open account’ includes any account for which a part or all of the balance is past due.... ” In the normal course of business an open account is analogous to a credit account.

Id.

The Attorney General’s opinion is consistent with the Louisiana courts’ construction and application of the statute. In Blue Bonnet Creamery, Inc. v. Gulf Milk Association, Inc., 172 So.2d 133 (La.App.1965), a milk delivery business issued checks to its distributor on a bi-weekly basis in payment for dairy products. After the milkman’s business suffered a sharp decline, his checks began to “bounce.” By mutual agreement, the distributor first allowed a balance to accrue, then insisted on the daily issuance of checks, which would often be returned two or three times, and finally, accepted only cash. The court questioned the applicability of a criminal statute to a civil proceeding, 172 So.2d at 139, and with regard to the checks issued while the balance was allowed to accrue, held that “there could be no fraud inasmuch as it is settled law that a worthless check given in payment of an open account or preexisting indebtedness cannot be issued with intent to defraud.” Id. at 137, citing State v. McLean, 216 La. 670, 44 So.2d 698 (1950).
Likewise, in State v. Jones, 400 So.2d 658 (La.1981), a grocery store credit arrangement secured by a check was found to be an “open account” and outside the purview of La.Rev.Stat.Ann. § 14:71. Id. at 660. Moreover, the court found that the defendant, an SSI recipient whose checks were returned one month after she was faced with an unexpectedly high utility bill, did not have the requisite intent to defraud the grocer. Id. at 661. Based on the statute and the case law interpreting it, it is apparent that Wilcox’s complaint against the McCurleys is a civil, not a criminal matter, and that no crime was committed at all.
The circuit court further was correct in adducing that the checks complained of had been “abrogated” by a new agreement or novation between the parties. The McCur-leys’ assignment to Wilcox Oil Company of a promissory note, second lien on inventory, third mortgage and lease assignment, as well *349 as the checks their daughter brought to Louisiana were novation for the civil debt owed. CHF Finance Discount “A” Co., Inc. v. Harris, 188 So.2d 457, 458 (La.1966); Straughter v. Holy Temple of the Church of God and Christ, 150 So.2d 124, 127 (La.1963).
In the case sub judice, the MeCurleys maintain resistance to the Louisiana authorities arguing that they were not in Louisiana at the time of the alleged crime and therefore, were not fugitives. Doran affirms the MeCurleys’ right to establish that they were not fugitives. As stated previously, under Doran, a court which considers habeas relief is permitted to review only four elements, one being whether the petitioners are fugitives. Doran, 439 U.S. at 288, 99 S.Ct. at 535, 58 L.Ed.2d at 527. This Court has followed the same restrictions in granting habeas corpus relief. See Allen v. State, 515 So.2d 890 (Miss.1987); Johnson v. Ledbetter, 348 So.2d 1007 (Miss.1977); Taylor v. Garrison, 329 So.2d 506 (Miss.1976). Mississippi defines a fugitive as “a person that has been in the demanding state at the time of the crime.” Allen, 515 So.2d at 891. Therewith, this Court stated “[o]ne is not a fugitive if he establishes beyond a reasonable doubt that he was without the border of the demanding state at the time of the admission of the crime.” Johnson, 348 So.2d at 1010.
Keeping in mind this Court’s reasoning, the State of Mississippi alleges that the crime occurred in Louisiana. However, there is no basis for finding that the alleged crime occurred in Louisiana or that the MeCurleys were in Louisiana when the alleged crimes took place. Wilcox Oil approached the MeCurleys in Mississippi about selling petroleum products in Mississippi. A lease agreement was made in Mississippi and gasoline tanks and other fixtures belonging to Wilcox were installed on the MeCurleys’ property in Mississippi. Every week, the Wilcox representative traveled to Woodville and received a check from the MeCurleys, which was written in Mississippi and drawn on a Mississippi bank. When the MeCurleys fell behind in the payments on their account, the liens and mortgages granted to Wilcox were filed in Mississippi on property located in Mississippi.
La.Rev.Stat.Ann. § 14:71 requires that the checks must be issued. The Reporter’s Comment to § 14:71 defines the term issue as “the first delivery of the instrument complete in form to a person who takes it as a holder.” Reporter’s Comment, La.Rev.Stat. Ann. § 14:71 at 713. Clearly, these checks were issued in Mississippi when the Wilcox representative collected the checks in Mississippi. This established, the alleged crime with which the MeCurleys are charged could not have occurred in Louisiana. Only on one occasion were checks delivered to Wilcox in Louisiana — by the MeCurleys’ daughter— and this was a part of. a novation, not a cheek, and nothing more than a promissory note.
The majority finds that the MeCurleys made a constructive appearance in the case at hand. However, there is no basis for such a finding since nothing in the record even hints at the MeCurleys’ appearance in Louisiana. The MeCurleys were always in Mississippi and never committed any of the acts complained of in Louisiana. From the record, it is apparent that all contacts between the MeCurleys and Wilcox Oil were in Mississippi and not Louisiana. Therefore, the circuit court correctly found that the MeCur-leys were not fugitives in any shape, form or fashion.
Confusion, contradiction and discrepancies exist in the extradition documents. On then-face, they are not in order and thus the third requirement in considering habeas relief is not fulfilled. The Governor’s extradition writ, which provides the authority to transfer the MeCurleys from Mississippi to Louisiana, states that the alleged wrongful acts occurred in Mississippi. However, the affidavit from Louisiana expressly states that the MeCurleys committed the alleged bad acts in Louisiana, and the requisition application cites the crime as being committed outside the state of Louisiana.
Lastly, to add to the confusion, the warrant fails to cite where the acts were committed. Clearly, if the writ says the acts occurred in Mississippi, then Louisiana has no jurisdiction over the case. The circuit court was again correct, therefore, in holding that the extradition documents were not in order.
*350 This case appears to be nothing but an attempt to circumvent the protection afforded to individuals in bankruptcy, wherein Wilcox Oil hoped to benefit from the restitution provisions of La.Rev.Stat.Ann. § 14:71(G). The statute under which the McCurleys were charged is not applicable to the acts complained of. The habeas court, properly acting within the scope of review established in Doran, correctly found that a novation had occurred, that the McCurleys were not fugitives and that the extradition documents were not in order. Moreover, the State, through its Assistant Attorney General, agreed to the court’s findings and judgment, thus waiving its right to now complain since one may not appeal from a consent judgment. Guthrie v. Guthrie, 233 Miss. 550, 102 So.2d 381 (1958). Since no crime has been committed, the majority’s opinion is in contravention to the purposes of habeas relief. Accordingly, I disagree with the majority and would affirm the findings of the circuit court.
DAN M. LEE, P.J., and SULLIVAN, J., join this opinion.