# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-01827-SCT

*HOWARD SONKIN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/24/2000 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JACKSON M. BROWN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 6/13/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/17/2002 |

**EN BANC.**

**COBB, JUSTICE, FOR THE COURT:**

¶1. After a writ of extradition was issued to transport Howard Sonkin from Mississippi to Arkansas to face criminal charges there, Sonkin filed a petition for writ of habeas corpus in the Oktibbeha County Circuit Court. Following a hearing, the circuit court denied the petition, finding that the rendition warrant was in proper form and that Sonkin should be held for transfer to the State of Arkansas.

¶2. Sonkin appeals the denial of his petition, submitting four assignments of error, which are edited for clarity, as follows:

> **I. HIS RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS HAVE BEEN VIOLATED;**
>
> **II. THE ENTIRE PROCEEDING WAS VITIATED DUE TO RICHARD'S FRAUD;**
>
> **III. HE DID NOT COMMIT A CRIME UNDER ARKANSAS LAW, NOR IS HE A FUGITIVE;**

## IV. THE EXTRADITION DOCUMENTS WERE NOT ON THEIR FACE IN ORDER.

¶3. Because Sonkin was not allowed to put into evidence the proof that he offered at the habeas hearing, to rebut the prima facie case established by the rendition warrant and the other extradition documents, in an attempt to demonstrate that the documents were not on their face in order, we reverse and remand to the Oktibbeha County Circuit Court for a proper hearing on the petition for a writ of habeas corpus. Further, until the facial propriety of the extradition documents has been determined, it is premature to address the first three issues on appeal.

## FACTS

¶4. Howard Sonkin has been a resident of Starkville, Mississippi for more than twenty-five years. He had owned Bingham's Jewelry for over two decades, but after retiring, he began to build chairs. Sonkin met Ken Richards at the Tupelo Furniture Market in Tupelo, Mississippi. Sonkin entered into an agreement to buy lumber from Richards, an Arkansas merchant. After the lumber was delivered, Sonkin discovered that Richards had charged him 16% over cost, instead of 8% over cost, the price upon which Sonkin claims they had verbally agreed. Sonkin stopped payment on the check he had issued for the lumber and reissued another check reflecting the corrected total. Soon after Sonkin had sent the replacement check, he discovered that the lumber was non-conforming because the boards were not long enough, were wet and gray, and were unsuitable for building furniture. Sonkin claimed the lumber purchase was protected by an implied warranty of merchantability.[1] Sonkin then stopped payment on the reissued check, placed the lumber in rental storage, and notified Richards to pick up the lumber.

¶5. Richards then filed suit against Sonkin for breach of contract in the Circuit Court of Nevada County, Arkansas. Sonkin did not respond to that complaint and the Arkansas court entered a default judgment against him for $5,916 plus attorney's fees of $1,000 and costs of $102. Apparently Richards did not enroll that judgment in Mississippi, nor did he file a garnishment or levy on Sonkin's property. Rather, less than one month later, Richards filed criminal charges against Sonkin in that same Arkansas court, alleging theft of property pursuant to Ark. Code Ann. § 5-36-103 (1987), a class B felony, which upon conviction carries a minimum of 5 years and a maximum of 20 years in prison.

## STANDARD OF REVIEW

¶6. In extradition proceedings in this state, a trial court has a limited scope of review. A court considering habeas relief is allowed to review:

> (A) Whether the extradition documents on their face are in order;

> (B) Whether the petitioner has been charged with a crime in the demanding state;

> (C) Whether the petitioner is the person named in the request for extradition; and

> (D) Whether the petitioner is a fugitive.

*State v. McCurley*, 627 So.2d 339, 344 (Miss. 1993).

## DISCUSSION

¶7. This case results from a dispute between two businessmen regarding whether the goods which Richards

provided to Sonkin, under the terms of an agreement they made during the Tupelo Furniture Market in 1999, were non-conforming goods, and whether the price charged was the price upon which they agreed. Sonkin, who had been a businessman in Starkville for more than 25 years, attempted to pursue his rights as a purchaser under the provisions of the Uniform Commercial Code which relate to rejection of non-conforming goods, although hindsight indicates that he did so in a less-than-perfect manner.

¶8. Upon initial reading, it appears that the language of the extradition statute[(2)] and related case law indicates that executive and judicial authorities of this state must accept the documents presented by the authorities of the requesting state and turn the named person over to the authorities of the requesting state. Upon a more careful reading of the cases and statute, however, it is clear that not only does the authority exist, but also the obligation, to give close scrutiny to the documents presented, to determine whether they are proper on their face.

¶9. In *Michigan v. Doran*, 439 U.S. 282, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978), the United States Supreme Court discussed the purpose of the Extradition Clause.

> The Extradition Clause was intended to enable each state to bring offenders to trial as swiftly as possible in the state where the alleged offense was committed. The purpose of the Clause was to preclude any state from becoming a sanctuary for fugitives from justice of another state and thus "balkanize" the administration of criminal justice among the several states. It articulated, in mandatory language, the concepts of comity and full faith and credit, found in the immediately preceding clause of Art. IV. The Extradition Clause, like the Commerce Clause served important national objectives of a newly developing country striving to foster national unity.

*Doran*, 439 U.S. at 287-88, 99 S.Ct. at 534-35 (internal citations omitted).

¶10. Although the review of extradition documents is limited, clearly it is permissible to look on the face of the documents to determine whether they are in order. In *Bishop v. Jones*, 207 Miss. 423, 42 So.2d 421 (1949), this Court stated:

> it is also now well settled that the decision of the Governor of the asylum state, when holding the extradition proceedings to be sufficient in form and substance as a jurisdictional prerequisite to granting relief to the demanding state, is subject to review in a habeas corpus proceeding brought by the accused.

*Id.* at 424. It is clear that a habeas corpus hearing conducted pursuant to a rendition warrant is not intended to be a mere rubber stamp, but instead is intended to afford the petitioner a true opportunity to rebut the presumption that extradition documents on their face are in order. At Sonkin's habeas corpus hearing, the judge permitted him to make a record regarding the errors on the face of the documents, but did not allow them to be admitted into evidence. At the conclusion of the hearing, the circuit judge acknowledged in his bench ruling that there are four basic issues that the court is required to consider and address when a petition for writ of habeas corpus is filed in an extradition matter, but he did not enumerate them. He did, however, briefly mention *McCurley*, and then went on to say that he was "required by law, therefore, to deny the petition for writ of habeas corpus." He apparently determined, during the introduction by the State of the "extradition documents package exhibit," that the documents were "in the correct form" and because there was no objection to "admissibility as to authenticity or anything like that," that the documents on their face were in order. We believe this is an incomplete application of the first factor stated in *McCurley*. The

judge is required to examine the documents to determine not only their correct form and authenticity, but also whether they are proper on their face.

¶11. The following seven documents were included in the extradition package presented to the trial court:

*a) The Affidavit for Warrant of Arrest.*

¶12. The "Affidavit for Warrant of Arrest," subscribed and sworn to by the Investigator for the Nevada County Sheriff's Department, appears to corroborate Sonkin's version of the facts when it states:

> In August 1999 Howard Sonkin purchased a load of lumber from Richards Wholesale, Ken Richards, in Prescott. On Thursday, September 2nd, 1999 Howard Sonkin received the load of lumber. On Friday, September 3rd, 1999 Howard Sonkin sent check number 3337 for the amount of five thousand nine hundred sixteen dollars and thirty-four cents to Richards Wholesale. On Monday, September 6th, 1999 Howard Sonkin faxed a letter to Ken Richards stating that he was going to stop payment on the check and issue Ken Richards a new one for correct amount. Howard Sonkin issued check number 3356 for the amount of three thousand nineteen dollars and two cents to Richards Wholesale on September 14, 1999. Howard Sonkin stopped payment on the second check and still has the lumber as of this date.

However, this chain of events is contradicted on the face of six other documents contained in the extradition package introduced at the habeas hearing by the State.

*b) The Felony Information.*

¶13. In the felony information, the Prosecuting Attorney for Nevada County, Arkansas, under oath, accused Sonkin of violating Ark. Code Ann. § 5-36-103 (1987) Theft of Property, on or about the 3rd day of September, 1999, by unlawfully and feloniously:

> Count 1: **knowingly take or exercise unauthorized control over, or make an unauthorized transfer of an interest in**, the property, namely a load of lumber valued at $5,916.34, of another person, namely Ken Richards doing business as Richards Wholesale, **with the purpose of depriving the owner thereof**, against the peace and dignity of the State of Arkansas.

> Count 1: CLASS "B" FELONY punishable by imprisonment for not less than five (5) years nor more that twenty (20), and/or a fine not to exceed $15,000.

(emphasis added).

*c) Affidavit of the Prosecuting Attorney.*

¶14. The prosecuting attorney also attached an affidavit that claimed: "I further state that **the accused was present in Nevada County, Arkansas, at the time of the commission of the alleged crime.**" (emphasis added).

*d) Petitioner's Application of the Prosecuting Attorney.*

¶15. The application subscribed and sworn to by the prosecuting attorney states as follows:

That on or about the 1st day of May, 2000, the said Howard Sonkin **fled from the State of Arkansas**, and is now, as your petitioner verily believes, in Starkville, Oktibbeha County, State of Mississippi, a fugitive from the justice of this State.

. . .

that ends of justice require the return of Howard Sonkin, and that a requisition for the above-named fugitive **is not sought for the purposes of collecting a debt**, . . .

(emphasis added).

### *e) Arkansas Governor's Requisition.*

¶16. In his requisition for apprehension of Sonkin, the Governor of Arkansas states:

HOWARD SONKIN . . .

is charged . . . of the crime of . . .

THEFT OF PROPERTY

**committed in Nevada County** which I certify to be a crime under the laws of this State **and has fled from this State** and is a fugitive from the justice **thereof**. It is believed such fugitive **has taken refuge**[3] in the State of Mississippi.

(emphasis added).

### *f) Agent's Appointment.*

¶17. The Agent's Appointment also signed by the Governor of Arkansas reads:

Whereas, HOWARD SONKIN **late of Nevada County** in the State of Arkansas is charged . . . [with] THEFT OF PROPERTY.

(emphasis added).

### *g) Rendition Warrant.*

¶18. The rendition warrant signed by the governor states:

WHEREAS, **it appears that said fugitive has fled from justice, and is to be found in the State of Mississippi, where he has taken refuge** . . .

(emphasis added). These numerous inconsistencies on the face of the documents were further contradicted by-Sonkin in his "Motion For Writ of Habeas Corpus in Extradition." At the habeas hearing, Sonkin also presented three other witnesses who testified that the documents were not proper on their face. The trial court allowed the testimony to "make [the] record," after sustaining the objection of the State.

¶19. After stopping payment on the second check and advising Richards that he had done so and that the lumber was in storage, Sonkin received the following threatening letter from Richards's attorney, which further seemed to indicate that the extradition documents contained numerous discrepancies.

You agreed to purchase lumber from Mr. Richards pursuant to the terms expressed in the invoice attached hereto and have breached the contract in failing to pay the agreed upon price. In your correspondence to Richards' Wholesale dated September 9, 1999, you agreed the quoted price was good. Apparently, after checking with Richards' Wholesale supplier, you decided that my client's profit was not to your liking and failed to perform as agreed, i.e., paying the agreed upon price for the lumber. Furthermore, you issued a worthless check for payment of this lumber, which is a felony violation of Mississippi state law.[4]

. . .

If payment is not tendered within ten (10) days of your receipt of this letter, I will commence an action for breach of contract and file a criminal report seeking felony prosecution against you for the worthless check you tendered as payment.

¶20. In *Johnson v. Ledbetter*, 348 So.2d 1007, 1010 (Miss. 1977), this Court stated that the testimony of the petitioner, standing alone, was not sufficient to rebut the prima facie case. However, in the case sub judice, we have more than just Sonkin's testimony. We have the testimony of three other witness, documents in the extradition package, and documents from Richards. In *McCurley*, the majority opinion quoted *Walden v. Mosley*, 312 F. Supp. 855, 862 (N.D. Miss. 1970), in asserting that the petitioner has the right to rebut the presumption created by the authenticated documents:

Ex parte affidavits may be, and customarily are, used in extradition proceedings. They make a prima facie case of the truth of their contents, or as stated by some cases, create a presumption that the crime charged was committed and that the person charged therein committed it, and can be rebutted only by clear and convincing evidence.

*McCurley*, 627 So.2d at 345.

¶21. We recognize the important policy purposes behind the Extradition Clause and our own extradition statute and the limited review afforded the courts. However, when the extradition documents are replete with discrepancies, we not only can, but must allow the petitioner to put into evidence documents which refute the facial errors.

¶22. The record reflects that the judge determined that the documents were authentic, something that Sonkin did not dispute. Apparently the judge was of the opinion that the fact that the documents were authentic satisfied the first factor "on their face in order," or as it is often phrased, "proper on their face." However, Sonkin's position was that "the documents are in **substantially the correct form,**" but that he objected to some of the factual data. (emphasis added). In effect, Sonkin admitted that they were authentic, but rejected that they were proper on their face because of numerous factual inaccuracies.

¶23. This case may seem strikingly similar to the landmark case of *McCurley* because both involve Mississippi businessmen being extradited to another state: McCurley to Louisiana for bouncing checks there, after intentionally making payments for gasoline delivered to McCurley's store, knowing that funds were unavailable to cover the checks; Sonkin to Arkansas for stopping payment on checks he sent to pay for lumber received, upon discovery that the lumber was not as ordered. A closer look, however, indicates the present case involves a completely different issue. In *McCurley*, there was **one** discrepancy in the extradition documents. This one discrepancy resulted in the determination that the documents were

improper on their face ("not on their face in order") and new documents had to be drafted before the extradition was allowed to go forward. In the case sub judice, there are numerous inconsistencies, as we have pointed out. We conclude that if extradition documents are improper on their face, proper documents must be submitted before we will permit one of our citizens to be extradited to another jurisdiction to face criminal charges.

¶24. We are not carving out an exception to, or attempting to overrule *McCurley*, even though the two cases can be factually distinguished. In *McCurley* there were fifty-eight checks returned for insufficient funds; in the present case there were two checks on which payments were stopped, both issued in conjunction with a single transaction. In *McCurley* there was evidence that some of the checks were delivered in person, meaning the person was actually in the foreign state; in this case the checks were mailed. In *McCurley* there was evidence that the McCurleys knew there were not sufficient funds in the account to cover the checks when the checks were delivered; there is no similar evidence in this case. Contrary to being bounced checks, these were stop payment orders. However, all of this is irrelevant. What is relevant is that McCurley received a hearing where it was found that the documents were improper on their face because there was a discrepancy as to where the crime occurred. For that reason, the documents were rejected, and new documents were submitted. Sonkin did not receive the same treatment. He was never given a true hearing where he was allowed to rebut the presumption that the documents were proper on their face.

¶25. We are fully cognizant that in *McCurley*, interpreting Miss. Code Ann. § 7-1-25(2) (1991), we adopted the theory of "constructive presence," recognizing that a person does not have to be actually present in another state to commit a crime there. We are also cognizant that subsection (2) of our extradition statute is permissive, as opposed to subsection (1), which is mandatory. We do not dispute that Sonkin "may be" extradited for committing a crime in Arkansas, even if he has never set foot in the state. What we are saying is that, before that shall happen, he has the right to put forth evidence at a hearing that the extradition documents are not proper on their face. A meaningful hearing is the essence of due process and that did not happen here. As this Court stated in *Weeks v. Weeks*, 556 So.2d 348 (Miss. 1990):

> Every defendant or respondent has the right to notice in a court proceeding concerning him and to be present and to introduce evidence at the hearing. The parties should be afforded a full, complete hearing at which the parties have an opportunity to call witnesses in their behalf and be heard by themselves or counsel. **If a full and complete hearing is not allowed by refusing the defendant his opportunity to present evidence, then the defendant is thereby deprived of due process.**

*Weeks*, 556 So.2d at 349-50 (citations omitted & emphasis added). *See also* *Morreale v. Morreale*, 646 So.2d 1264 (Miss. 1994); *Fortenberry v. Fortenberry*, 338 So.2d 806 (Miss. 1976).

¶26. We fully understand that extradition is a summary procedure "and not the appropriate time or place for entertaining defenses or determining the guilt or innocence of the charged party." *McCurley*, 627 So.2d at 344. We are aware that in some jurisdictions, a showing of "probable cause" for arrest by the demanding state is necessary before extradition is permitted. However, this Court has never adopted that view, and we are not doing so here. Instead, what we are reaffirming is that one of the issues the court can address is whether the extradition documents are on their face in order. To rebut the presumption that they are in order, the petitioner must be allowed to put on evidence. In this opinion, there was proffered evidence that Sonkin was not in Arkansas, did not flee Arkansas, and is not hiding out in Mississippi. This was done, not

to show that he is innocent; but instead, to indicate that the extradition documents that stated he was in Arkansas, fled that jurisdiction, and has taken refuge in Mississippi, were not proper on their face because of factual inaccuracies. There was also proffered evidence that this was actually a civil matter in which the criminal justice system of the state was invoked to collect a civil debt. This would show that the "Petitioner's Application of the Prosecuting Attorney," which states that the requisition "is not sought for the purposes of collecting a debt," is not proper on its face. However, this determination is not for this Court to make; it must be made by the circuit court upon rehearing.

¶27. Our opinion is consistent with the extradition clause of the U.S. Constitution, federal extradition law, our extradition statute, and binding precedent from this Court, including *McCurley*. We are not expanding any right or overruling any case. We are merely saying what our judicial system has always recognized, and continues to recognize, that due process requires a hearing, and the hearing must allow the petitioner to put forth evidence. We are mindful that an extradition hearing is for a limited purpose. However, precedent states that the court can review four issues, one of which is whether the documents are on their face in order, or put another way, proper on their face. Sonkin was not given such a hearing. Thus, he was denied due process which is guaranteed by our law.

## CONCLUSION

¶28. The circuit court erred in denying Sonkin's petition for writ of habeas corpus without affording him the opportunity to rebut the presumption that the extradition documents were proper on their face. For that reason, we reverse and remand to the Oktibbeha County Circuit Court for a proper hearing, where Sonkin is allowed to introduce evidence to rebut the presumption that the extradition documents are proper on their face.

¶29. **REVERSED AND REMANDED.**

**SMITH, P.J., DIAZ, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY WALLER, J. WALLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PITTMAN, C.J., AND McRAE, P.J.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶30. The majority, in its fourteen-page diatribe, tries to circumvent its previous holding in *State v. McCurley*, 627 So.2d 339 (Miss. 1993), which is undeniably similar to this case. The majority says that Sonkin was not given a hearing, when in fact, he was given a hearing. We are to base our decisions on the record. In this case, Sonkin was given a hearing, and it was concluded that the documents on their face were proper and that the court had to honor the extradition. Some of the factual scenarios to which the majority alludes as being in dispute, are the same factual scenarios that occurred in the *McCurley* case involving the same situation. *Id.* at 344. What the majority fails to recognize is that Sonkin had a hearing. Sonkin did not proffer any evidence outside of the hearing. For the majority to say that he did not have a hearing is disingenuous; he did. Can Sonkin make a record of any further discrepancies that are not included in the *McCurley* case? I think not.

¶31. I dissent from the majority as it attempts to carve out an exception to, instead of overruling, its decision in *McCurley*, a case that is almost identical to this one. *Id.* The majority's attempt to distinguish

between the mailing of a check as opposed to having someone take the check over to another state and between checks returned for insufficient funds and checks on which payments were stopped is disingenuous. In either situation, the jury of the demanding state must decide the substance of the charges. Because of *McCurley*, *supra*, and our statute on extradition, Miss. Code Ann. § 7-1-25, in conducting extradition proceedings in Mississippi, a trial court has a limited scope of review:

> (A) Whether the extradition documents on their face are in order;
>
> (B) Whether the petitioner has been charged with a crime in the demanding state;
>
> (C) Whether the petitioner is the person named in the request for extradition; and
>
> (D) Whether the petitioner is a fugitive.

*Allen v. State*, 515 So.2d 890, 891 (Miss. 1987) (quoting ***Michigan v. Doran***, 439 U.S. 282, 288 99 S.Ct. 530, 535, 58 L. Ed.2d 521, 527 (1978)).

¶32. In *McCurley*, a representative of a gas distributor came to Mississippi and approached the McCurleys about selling their petroleum products. The check for the petroleum products was picked up by the truck driver every Monday when he made his delivery. *McCurley*, 627 So.2d at 341. The McCurleys' daughter delivered four checks to the distributor in Louisiana for payment. The checks in *McCurley* were not honored by the bank due to insufficient funds. *Id.* In this case Sonkin ordered materials that were to be shipped out of Arkansas and delivered to Mississippi, and the check was mailed to Arkansas to cover the purchase price upon arrival of the lumber. Payment was stopped on the first check due to an incorrect amount, and a subsequent check was issued. Payment was stopped on the second check when the lumber in question was discovered to be non-conforming and unsuitable for the purpose for which it was intended, building furniture. Sonkin placed the lumber in storage and notified Richards to pick up the lumber. In the *McCurley* case, the majority stated that the documentation was proper and that the McCurleys would have to fight the charge in Louisiana. *Id.* at 345. Likewise, Sonkin must face the charge in Arkansas.

¶33. In ***California v. Superior Court***, 482 U.S. 400, 107 S. Ct. 2433, 96 L Ed.2d 332 (1987), the United States Supreme Court defined extradition as a summary procedure stating: "The language, history, and subsequent construction of the Extradition Act make clear that Congress intended extradition to be a summary procedure. As we have repeatedly held, extradition proceedings are 'to be kept within narrow bounds'; they are 'emphatically' not the appropriate time or place for entertaining defenses or determining the guilt or innocence of the charged party." *Id*. at 406, 107 S. Ct. at 2438, 96 L Ed.2d at 340.

¶34. According to Mississippi case law, extradition is a summary executive proceeding by which an alleged criminal can be brought before the appropriate tribunal. *Garrison v. Smith*, 413 F. Supp. 747, 752 (N.D. Miss. 1976). It is not for courts in the asylum state to inquire into the constitutionality of another state's criminal justice system. *Id.* at 753. Therefore, the asylum state is not to question whether the warrant for the fugitive's arrest is supported by probable cause. *Id.* The accused's constitutional rights are guaranteed by the courts of the demanding jurisdiction. *Id.* at 754. Sonkin may be right in his assertion that he may not have committed a crime at all. However, this is not a question for our courts to decide. The issue is whether the extradition should be upheld, not whether Sonkin is innocent or guilty. The proper forum for this to be decided is a court in the demanding jurisdiction, not the asylum state. *See* *Taylor v. Garrison*, 329 So.2d 506, 511 (Miss.1976). Although Mississippi has an important state interest in protecting its citizens from

removal to other jurisdictions unjustly, we must not forget the state's duty under federal extradition law. *See McCurley*, 627 So.2d at 344.

¶35. In *McCurley* we said the McCurleys had to go to Louisiana and face the charge. It was a legitimate charge from our analysis; it was a crime. The documentation was in order and they were the particular people who were named and requested in the extradition papers. In effect, the petitioners were constructive fugitives. We must either overrule *McCurley* or follow it, not carve out exceptions. We should be consistent. As stated previously, in conducting extradition proceedings in Mississippi, a trial court has a limited scope of review. Allen, 515 So. 2d at 891. In the case at bar, the petitioner has not been denied his rights under the Fourth or Fourteenth Amendments. He has been charged with a crime in Arkansas; he is the person named in the request, and according to Miss. Code Ann. § 7-1-25 (2) and our holding in *McCurley*, he is a fugitive.

¶36. The majority in *McCurley,* in effect, said that the McCurleys had to face the charges in Louisiana, and by the same token Sonkin should have to face the charges in Arkansas. It is true that I dissented in *McCurley*, and questioned the applicability of a criminal statute to a civil proceeding. *See Blue Bonnet Creamery, Inc. v. Gulf Milk Ass'n*, 172 So.2d 133, 139 (La. Ct. App. 1965). This, too, is a civil matter using the criminal process to collect the debt, but the majority ruled as to the actual criminal charge in *McCurley* and said that the trial court was limited in its scope to the four elements presented in *Doran*, 439 U.S. 282, 288, 99 S.Ct. 530, 535, 58 L. Ed.2d at 527. I therefore dissent from the majority's attempt to make an exception to *McCurley* and the majority's failure to follow it or overrule it. One can only wonder why the majority sends this case back for another hearing when one has already been held.

¶37. Accordingly, I dissent.

**WALLER, J., JOINS THIS OPINION IN PART.**

**WALLER, JUSTICE, DISSENTING:**

¶38. Because the majority's opinion is plainly inconsistent with both the extradition clause of the United States Constitution, U. S. Const. art. IV, § 2, cl. 2, and our precedent, I respectfully dissent.

¶39. The Governor of Arkansas requested that the Governor of Mississippi issue a warrant of rendition for Howard Sonkin based on a felony information charging Sonkin with "theft of property." The request for extradition was supported by proper paperwork, documentation, and certification pursuant to the laws of interstate rendition. Sonkin admitted that he was the individual sought for extradition. After presentation of all the evidence, witnesses and arguments, the circuit court ordered Sonkin to be held for transfer to the Arkansas authorities.

¶40. Under Miss. Code Ann. § 7-1-25 (1991), a court's review of an extradition petition is restricted to whether the documents are facially valid, a crime has been charged, the suspect is the person who is charged with the crime, and the suspect is a fugitive.[(5)] *State v. McCurley*, 627 So. 2d 339, 344 (Miss. 1993). *See also Allen v. State*, 515 So. 2d 890, 891 (Miss 1987) (citing *Michigan v. Doran*, 439 U.S. 282, 99 S. Ct. 530, 58 L. Ed. 2d 521 (1978)).

¶41. Sonkin agrees that the extradition documents are substantially correct and admitted that he has been charged with a crime in Arkansas and that he was the person being sought in the extradition papers. Therefore, the only issue to be decided is whether he was a fugitive. Sonkin argues that he could not be a

fugitive under the fourth prong of the ***McCurley*** test because he never went to Arkansas and thus could never flee from authorities in that jurisdiction. However, we have recognized the theory of constructive presence which does not require Sonkin to be present in Arkansas when the crime was committed:

> Miss. Code Ann. § 7-1-25(2) [and similar statutes from other states permit] extradition of persons committing crimes which violated the demanding states criminal statutes while not being physically present in the demanding state. These statutes which in no way offend federal extradition law, rather, they complement it. . . . The theory of constructive presence as found in § 7-1-25 alters the requirements of fugitivity which is traditionally found in criminal settings. In conclusion, we reiterate that Mississippi courts are not the proper forum for the parties to air their claims. . . .

***McCurley,*** 627 So. 2d at 347.

¶42. The State did not have to prove that Sonkin fled from Arkansas soil in order for him to be a fugitive. The application of the theory of constructive presence meets the fourth prong of our review. Sonkin can be extradited for a crime he allegedly committed in Arkansas while he was in Mississippi.

¶43. The issuance of a governor's extradition warrant creates a presumption that the warrant is valid and all the requirements have been met:

> The general rule regarding extradition in this state is that when a governor from a demanding state requisitions extradition and certifies that the respondent committed the crime while in the demanding state, and that the duly authenticated accusatory document is genuine and states a crime under the laws of that state, such facts authorize the arrest and extradition of the defendant. The introduction of the Governor's extradition warrant creates a presumption that all the requirements for extradition have been met. Once this *prima facie* showing has been made, it is the appellant's burden to prove he is not the person wanted or was not in the demanding state at the time of the crime.

***McCurley***, 627 So. 2d at 345 (citations omitted). *See also* ***Allen***, 515 So.2d at 891, 892; ***Crumpton v. Owen***, 376 So.2d 641 (Miss.1979); ***Taylor v. Garrison***, 329 So.2d 506, 510 (Miss. 1976).

¶44. Mississippi courts do not make independent findings of probable cause. Review is limited to whether the paper submitted facially shows a finding of probable cause by a neutral magistrate:

> Under Art. IV, § 2 [of the United States Constitution], the courts of the asylum state are bound to accept the demanding state's judicial determination since the proceedings of the demanding state are clothed with the traditional presumption of regularity. In short, when a neutral judicial officer of the demanding state has determined that probable cause exists, the courts of the asylum state are without power to review the determination. Section 2, cl. 2, of Art. IV, its companion clause in § 1, and established principles of comity merge to support this conclusion. To allow plenary review in the asylum state of issues that can be fully litigated in the charging state would defeat the plain purposes of the summary and mandatory procedures authorized by Art. IV, § 2. *See, e.g.*, *Sweeney v. Woodall*, 344 U.S. 86, 90, 73 S. Ct. 139, 140, 97 L. Ed. 114 (1952); *Marbles v. Creecy*, 215 U.S. 63, 69-70, 30 S. Ct. 32, 33-34, 54 L. Ed. 92 (1909); *Pierce v. Creecy*, 210 U.S. 387, 404-405, 28 S. Ct. 714, 719-720, 52 L. Ed. 1113 (1908).

***Doran,*** 439 U.S. at 290, 99 S. Ct. at 536.

¶45. For the above reasons, I would affirm the judgment of the circuit court. Therefore, I respectfully dissent.

**PITTMAN, C.J., AND McRAE, P.J., JOIN THIS OPINION.**

1. *See* Ark. Code Ann. §§ 4-2-314 & - 608, and Miss. Code Ann. §§ 75-2-314 & - 608 (1972). These pertinent provisions of both states' versions of the UCC are identical.

2. Miss. Code Ann. § 7-1-25(1) (1991) states in pertinent part:

> It shall be the duty of the governor, on demand made by the executive authority of any other state, territory or district for any person charged, on affidavit or indictment in such other state, territory or district, with a criminal offense and who shall have fled from justice and be found in this state, the demand being accompanied with a copy of the affidavit or indictment certified as authentic by such executive authority, to cause the offender to be arrested and delivered up to the authority of such state, territory or district for removal to the jurisdiction having cognizance of the offense....

3. At the habeas hearing, Sonkin testified that he has never been to Nevada County, Arkansas, nor did he even know where it was located. Further he testified that he had been a resident of Oktibbeha County, Mississippi, for more than 25 years.

4. Mississippi's bad check and insufficient funds law (*see* Miss. Code Ann. §§ 97-19-55 & -57 (2000)), covers bounced checks. As Sonkin points out, an Attorney General Opinion states: "If there is no fraudulent intent on the part of the maker or drawer of the check at the time the check was issued, then a stop payment order would not constitute a violation of this section." Miss. Att'y Gen. Op. #96-0784 Smith, November 8, 1996.

5. Miss. Code Ann. § 7-1-25 (1991) provides as follows:

> (1) It shall be the duty of the governor, on demand made by the executive authority of any other state, territory or district for any person charged, on affidavit or indictment in such other state, territory or district, with a criminal offense and who shall have fled from justice and be found in this state, the demand being accompanied with a copy of the affidavit or indictment certified as authentic by such executive authority, to cause the offender to be arrested and delivered up to the authority of such state, territory or district for removal to the jurisdiction having cognizance of the offense, upon payment of the costs and expenses consequent on arrest; and it shall be the duty of the governor to demand and receive fugitives from justice for offenses committed in this state.
>
> (2) The governor may also surrender, on demand of the executive authority of any other state, any person to be found in this state who stands charged in the manner provided in subsection (1) of this section with committing an act in this state, or in a third state, intentionally resulting in a crime in the state whose executive authority is making the demand.